## THOMAS MONTEROSE *v.* PAUL CROSS
### (AC 19185)

Foti, Schaller and Mihalakos, Js.

---

Argued February 17—officially released November 14, 2000

*George E. Mendillo,* for the appellant (plaintiff).

*Robert M. Brennan,* for the appellee (defendant).

*Opinion*

MIHALAKOS, J. The plaintiff, Thomas Monterose, appeals from the judgment rendered, following a jury trial, in favor of the defendant, Paul Cross, in this action sounding in negligence. On appeal, the plaintiff claims that the trial court improperly (1) refused to charge the jury on the standard of care applicable to the defendant in his work as a rigger, (2) failed to charge the jury regarding the testimony of expert witnesses as to the standard of care applicable to riggers and (3) charged the jury as to comparative negligence. We reverse the judgment of the trial court.

The jury reasonably could have found the following facts. The plaintiff went to the defendant's house to borrow a large wooden spool approximately four feet in width and weighing about 400 pounds. The defendant was experienced as a rigger and in moving heavy objects.[1] Together, the plaintiff and the defendant

---

[1] Paragraph two of the plaintiff's second amended complaint alleges: "At all times hereinafter mentioned, the defendant, Paul Cross, was and still is a rigger trained and experienced in moving heavy things such as furniture, equipment, steel and other large objects, and trained and experienced in the use of forklifts, cranes and other equipment customarily used by riggers

loaded the spool onto the plaintiff's truck. While the plaintiff and the defendant attempted to secure the spool, the spool slipped, fell out of the truck and landed on the plaintiff's leg. The defendant testified at trial that he never should have attempted to flip the spool over on its side and that by doing so, there was a substantial risk of injury to the plaintiff.

The plaintiff claims first that the court improperly failed to instruct the jury in accordance with his request to charge on the standard of care required of one who is a rigger and possesses a skill above that of an ordinary prudent person. The court refused to so charge on the grounds that the defendant was not an expert and that there was insufficient evidence to charge on the requested standard of care.

The plaintiff had alleged in his second amended complaint that the defendant was a rigger trained and experienced in equipment customarily used by riggers in moving things and, further, that the defendant failed to use the care and skill ordinarily used by riggers. The defendant admitted in his answer that he had experience as a rigger, but also stated that he was employed not as a rigger but as a welder.

At trial, there was testimony by the defendant that he had substantial experience in rigging and that he had been involved in moving all of his life. When asked to describe his qualifications as a rigger, the defendant testified that he had the ability to move equipment safely and to place it where people would not be injured.

There also was testimony from two expert witnesses, one of whom was Raymond Bedard. He testified that

in moving things."

In his answer to paragraph two of the plaintiff's second amended complaint, the defendant stated: "The defendant admits to having experience as a rigger and in moving heavy objects, but is employed as a welder, not a rigger."

he had been employed as a rigger for thirty-eight years. In a hypothetical question posed to Bedard involving the facts previously discussed, he was asked, on the basis of his knowledge and experience as a rigger, if there had been a departure from the standard of care that would apply to a rigger, to which he responded in the affirmative.[2] No objection to the hypothetical question was made, nor was an objection made to Bedard's opinion as to the standard of care.

This case involved a claim of alleged negligence committed by a person who allegedly had a particular skill and training. The loading and setting of the spool required expertise that is beyond the ordinary knowledge and experience of the jurors. Therefore, to prove professional negligence, expert testimony is required. Here, expert testimony was offered.

"When a topic requiring special experience of an expert forms a main issue in the case, the evidence on that issue must contain expert testimony or it will not suffice." (Internal quotation marks omitted.) *Sickmund* v. *Connecticut Co.*, 122 Conn. 375, 379, 189 A. 876 (1937). For example, in a case involving alleged negligence by an engineer in connection with repairs to a refrigeration plant, our Supreme Court found that it was incumbent on the plaintiff to produce evidence from an expert. "The plaintiff held itself out to be a skilled engineer.

---

[2] Bedard was questioned in part as follows:

"Q. Now, if you assume the facts I've already given you, and you assume that the spool is where I've indicated [it] was positioned in the truck, and you further assume that there's one person who is approximately six feet tall on the driver's side of the truck and another person who is approximately six feet and six inches tall on the passenger side of the truck. Both of these individuals are standing on the ground, and the individual on the operator's side of the truck lifts the spool from one of the wheels with the intention of tipping it toward the individual on the passenger's side of the vehicle. Can you tell me, based on your knowledge and experience as a rigger, whether or not attempting to lay the spool down in that fashion would be a departure from the standard of care that would apply to a rigger?

"A. Yes."

. . . The jury should have been instructed that the plaintiff was bound to exercise that degree of care which a skilled engineer of ordinary prudence engaged in the same line of business would have exercised in the same or similar circumstances." *Goodrich Oil Burner Mfg. Co.* v. *Cooke,* 126 Conn. 551, 553, 12 A.2d 833 (1940).

The conclusion of negligence is ordinarily one of mixed law and fact invoking the applicable standard of care, which is a question of law and its application to the facts of the case, which is a question of fact. The ultimate test of the existence of a duty to use care, the nonperformance of which constitutes negligence, is to be found in the reasonable foreseeability of harm resulting from a failure to use that care.

The defendant argues that the court was correct in charging that the standard of care was that of a reasonably prudent person. The plaintiff rejects that argument and claims that the court should have charged that the proper standard of care was that which a rigger would employ under the same circumstances. See *Smith* v. *Leuthner,* 156 Conn. 422, 424–25, 242 A.2d 728 (1968). The court in its charge defined the concept of negligence as involving the doing of something that a reasonably prudent person would not have done under similar circumstances or the failure to do something that a reasonably prudent person would have done under similar circumstances.[3] At the conclusion of the court's

---

[3] "The Court: So, therefore, I have to talk to you about the concept of negligence. In general, it may be defined as the doing of something which a reasonably prudent person would not have done under like and similar circumstances, or it may be an omission to do something which a reasonably prudent person would have done under similar circumstances or conditions. In other words, the law requires that people use reasonable care under all circumstances. Reasonable care means the care of a reasonably prudent person. I emphasize that phrase reasonably prudent person. From that, it follows that in a situation of danger, the care must be proportionate to the danger. This involves two inquiries on your part. First, what was the conduct of the parties, and what were the circumstances; second, what ought the defendant, as a reasonably prudent person, to have done under those circum-

charge, the plaintiff's counsel asked the court to charge on the standard of care applicable to riggers.[4] The court declined to do so.[5]

The correctness of a charge is determined by the proof offered during the course of the trial. Here, the court had before it testimony from the defendant and from an expert witness as to the standard of care. "It is not the proper course for a judge to lay down the general principles applicable to a case and leave the jury to apply them, but it is his duty to inform the jury what the law is as applicable to the facts of the case." (Internal quotation marks omitted.) *Sisson* v. *Stoning-*

stances. And when you're considering the defendant's claims, then you would say, 'And what would the plaintiff, as a reasonably prudent person, have done under similar circumstances?' The ultimate test of the existence of a duty to use reasonable care is to be found in the foreseeability that harm may result if the care is not exercised. By that, it is meant that one charged with negligence must be found to have foreseen the probability or that the particular injury would result was foreseeable. But the test that you should apply is this: Would the ordinary, reasonable, prudent person in the position of the defendant, knowing what he knew or should have known, anticipate that the harm of the same general nature as that actually suffered was likely to result?"

[4] "[Defense Counsel]: Thank you, Your Honor. Your Honor, I would ask that you further instruct the jury concerning the standard of care applicable to skilled persons in this case, in particular the standard of care applicable to riggers. The testimony of [the defendant] confirmed that he in fact was a rigger and that what he was doing with [the plaintiff] in loading the spool onto the truck was a rigging activity. So, I'd ask Your Honor to instruct the jury concerning that particular standard of care which would apply to [the defendant] as a rigger. And that's under, Your Honor, number three in my request to charge."

[5] In denying the plaintiff's request to charge, the court stated: "I thought that in my charge that I stopped and concentrated with the ordinary, reasonable person in the position of the defendant, knowing what he knew or should have known, anticipate that injury would have occurred. So, I think that without saying that he's a rigger, I think that I've covered that. I don't think that he was an expert or that he was hired as an expert or that he did something in that capacity, but I did, I think, charge that they should take into consideration what he knew or should have known. I think there's some evidence as to what he knew or should have known. So, I'm going to deny your request."

*ton,* 73 Conn. 348, 354, 47 A. 662 (1900). We conclude that the court improperly failed to charge the jury on the appropriate standard of care applicable to the defendant, and therefore a new trial is required.

Because a new trial is necessary, the plaintiff's other claims need not be considered. We must, however, consider the defendant's claim that the judgment can be affirmed on the basis of the general verdict rule. We do not agree that the general verdict rule applies in this case.

The defendant argues that the general verdict rule applies because there was no request for interrogatories and that this court, therefore, must presume that the jury found every issue in favor of the prevailing party.

"The general verdict rule operates to prevent an appellate court from disturbing a verdict that may have been reached under a cloud of error, but is nonetheless valid because the jury may have taken an untainted route in reaching its verdict." (Internal quotation marks omitted.) *Kunst* v. *Vitale,* 42 Conn. App. 528, 535 n.4, 680 A.2d 339 (1996).

In this case, there was a general denial and a special defense of contributory negligence. Even if we assume that the jury rejected the plaintiff's allegations of negligence *and* found him contributorily negligent, *both* of those determinations are undermined by the court's failure to instruct the jury as to the proper standard of care. There is therefore no "untainted route" to the verdict. See id. We therefore conclude that the general verdict rule does not apply in this case.

The judgment is reversed and the case is remanded for a new trial.

In this opinion FOTI, J., concurred.

SCHALLER, J., dissenting. Because I conclude that the plaintiff was not entitled to an instruction on an expert's duty of care, I would affirm the judgment of the trial court.

An examination of the record reveals that the operative complaint, the plaintiff's second amended complaint, is framed in terms of a theory of premises liability on the part of the defendant. The plaintiff, Thomas Monterose, alleges that the defendant, Paul Cross, was the owner of and in possession and control of premises in Watertown, and that the plaintiff was a social invitee on the premises for the purpose of picking up a large wooden spool to be used off the premises. The plaintiff further alleges that the defendant had exclusive control over the premises, and that it was his duty to render the premises reasonably safe for the loading and unloading of personal property. The complaint then asserts that while the plaintiff and the defendant were on the premises loading the spool onto the plaintiff's truck, the spool toppled over, falling onto the plaintiff. Among the allegations of negligence committed by the defendant on the basis of premises liability are several concerning the defendant's status as a skilled rigger, and the standard of care and skill to be used by riggers engaged in moving heavy objects.

The defendant filed a special defense that contained various allegations of comparative negligence, including an allegation that "the plaintiff had exclusive control of the situation at the time the spool toppled over on his leg. . . ." The defendant also alleged that the plaintiff "attempted to move the large wooden spool while under the influence of intoxicating alcoholic beverages," he knew or should have known that "his sense of balance" and "his strength" had been impaired by excessive consumption of alcohol, and "he knew or should have known that he could not safely handle the weight of the spool after consuming a large amount of beer."

The only legal relationship of the parties alleged in the second amended complaint that could generate a duty on the part of the defendant to the plaintiff, therefore, was based on an assertion of ownership and control of premises by the defendant. The sole duty of the defendant to the plaintiff, as alleged, was that of premises owner to social invitee. While it is true that the complaint contains several allegations concerning the defendant's experience and skill as a trained rigger, the plaintiff failed to allege any relationship or transaction between the parties that would invoke the defendant's experience or skill as a rigger. The defendant's status as a rigger would have no bearing on the defendant's duty as an owner of premises. "In general, there is an ascending degree of duty owed by the possessor of land to persons on the land based on their entrant status, i.e., trespasser, licensee or invitee." (Internal quotation marks omitted.) *Kurti* v. *Becker*, 54 Conn. App. 335, 338, 733 A.2d 916, cert. denied, 251 Conn. 909, 739 A.2d 1248 (1999). On the basis of the complaint, therefore, the only applicable standard of care would be ordinary negligence, that is, a duty of reasonable care. See *Cruz* v. *Drezek*, 175 Conn. 230, 234, 397 A.2d 1335 (1978); *Gulycz* v. *Stop & Shop Cos.*, 29 Conn. App. 519, 521, 615 A.2d 1087, cert. denied, 224 Conn. 923, 618 A.2d 527 (1992); see also General Statutes § 52-557a ("standard of care owed to a social invitee shall be the same as the standard of care owed to a business invitee"). The allegations as to the defendant's skill as a rigger are gratuitous and irrelevant to the theory of premises liability alleged in the second amended complaint because, in premises liability actions, the standard of care depends on the status of the visitor once the ownership status is determined. The duty of care in this case—of owner to social invitee—would be as alleged by the plaintiff, the duty to keep the premises in a reasonably safe condition.[1]

---

[1] When the trial court rejected the plaintiff's request for a jury instruction asserting a higher standard of care on the defendant's part, the reason for

Considering the theory of premises liability set forth in the second amended complaint, even if the jury found that a duty existed on the part of the defendant to the plaintiff, no higher standard of care because of the alleged special status of the defendant as a rigger would be applicable. Only the defendant's status as property owner and the plaintiff's status as an invitee would be relevant to the standard of care. Under any approach to this case, the trial court properly rejected the plaintiff's request for an instruction on a special standard of care to apply to the defendant.

In view of the foregoing analysis, we need not reach the difficult questions of whether, had the case been structured differently, the factual circumstances would warrant that the defendant should be held to a higher standard of care because of his past training and experience as a skilled rigger or whether the defendant's volunteer status would have a bearing on that issue.

For the foregoing reasons, I respectfully disagree with the conclusion of the majority as to the trial court's

rejection was not that premises liability governed, but rather that the matter had already been covered and, therefore, there was no need for a specific instruction of that nature.

Viewing the case as a general negligence case, the jury could well have found no duty on the part of the defendant to the plaintiff, especially since none was alleged. See *Waters* v. *Autuori*, 236 Conn. 820, 826–28, 676 A.2d 357 (1996). "We have often observed that [t]he law does not recognize a duty in the air. . . . Duty is a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action. The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual. . . . A further inquiry must be made, for we recognize that duty is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection. . . . While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. Every injury has ramifying consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree." (Citations omitted; internal quotation marks omitted.) Id.

jury instructions. I would affirm the judgment of the trial court.