[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
By his amended complaint filed July 6, 1999, the plaintiff, Todd Blumenkopf, seeks damages against the defendant, Andrew East, doing business as East Construction, and David Gerwick, doing business as D.W. Gerwick Engineering.[1] For reasons hereinafter stated, the issues are found for the defendants and judgment is rendered accordingly.
The complaint against the defendant, Andrew East (East), is set forth in two counts. The first count alleges a breach of contract. The second count of the complaint sets forth a claim that East, in the construction of a home in accordance with his agreement with the plaintiff was subject to the New Home Warranties Act, General Statutes § 47-116 et seq., and that he breached such warranties. The third count is a claim against David Gerwick (Gerwick), an engineer, for professional negligence.
After the plaintiff had presented his evidence and rested his cause, East moved for judgment of dismissal of counts one and two of the complaint pursuant to Practice Book § 15-8, claiming that the plaintiff had failed to make out a prima facie case. This motion was granted as to the second count alleging the breach of the statutory warranties provided by General Statutes §§ 47-116 through 47-121.
The allegations of the complaint and the pertinent evidence leads to the undisputed conclusion that the plaintiff was the owner of land at 9 Fairway Lane, Old Lyme and that he contracted with East to build a house on this lot. The New Home Warranties Act, which it is alleged that East violated, defines "purchaser" as "the original buyer, his heirs or designated representatives, of any improved real estate. . . ." General Statutes § 47-116. "Improvement" is defined as "any newly constructed single family dwelling unit. . . ." General Statutes § 47-116. "Therefore, [b]y its terms, the [Act] applies in situations where the vendor constructs the improvement on real estate owned directly or indirectly by [the vendor] and conveys the improved real estate to the purchaser. The Act does not apply when a landowner contracts with a builder to construct a new home on real estate already owned by the landowner." (Internal quotation marks omitted.) Scott v. RegencyDevelopers, Inc., Superior Court, judicial district of New Haven, Docket No. CV 98 0417639 (November 8, 2000, Levin, J.) (28 Conn.L.Rptr. 554, 555). See also Bouchard v. Boyer, Superior Court, judicial district of New London at New London, Docket No. CV 97 543089 (May 17, 1999, Hurley,J.T.R.); accord Jackson v. Fortunato, Superior Court, judicial district of Stamford at Stamford, Docket No. CV 88 0096695 (July 31, 1996, Ryan,CT Page 8203-cdJ.); Pelletier v. Pelletier Development Co., Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. CV 94 0463671 (March 14, 1996, Fineberg, J.); Blonder v. Heath, Superior Court, judicial district of Tolland at Rockville, Docket No. CV 90 0045252 (September 26, 1990, Jackaway, J.) (2 Conn.L.Rptr. 518, 520).
 I
The basic factual situation which underlies counts one and three of this action is not greatly in dispute and may be summarized as follows.
The plaintiff, who is restricted to a wheelchair, acquired a building lot at 9 Fairway Lane, Old Lyme in December, 1995. This lot was part of a subdivision previously approved by the town of Old Lyme. Having seen a house built by East, the plaintiff contacted East concerning construction of a house on his lot. The basic design of the proposed house selected by the plaintiff was based upon a illustration found in Gold Seal Home Plans. An architect was retained by the plaintiff to prepare the actual design of the house. In March, 1996, working plans were produced by the architect. The house was to be a one-level, single-family residence, 2400 square feet in area with three bedrooms, two and one-half baths and a deck. It was designed to accommodate the plaintiffs special requirements. Except for an area on the west side of the house, which had a crawl space, the house was to have a full basement, as is shown on the plan.
On June 25, 1996, the plaintiff entered into a contract with East, an experienced building contractor, whereby East agreed to construct a house on the plaintiffs lot in accordance with the plans. The contract price was $239,478.
Prior to construction, there was some discussion between the plaintiff and East concerning gradations of the lot because of the plaintiffs special requirements. The plaintiff indicated, for example, that he wanted the driveway to have a very slight incline. East informed the plaintiff that he was familiar with the requirements for such constructions having previously worked on a facility which required these concerns. East stated that the lot would be level.
East started construction in the fall of 1996. The defendant, Gerwick, was retained by East to design the septic system. Gerwick hired Daniel M. Coonrod, a licensed surveyor, to establish the contours of the lot. East also used the services of Coonrod for survey work on the lot. Avery Construction was hired by East to do the bulldozing and excavation. Inspectors from the town of Old Lyme checked the work to ensure compliance with the applicable codes and regulations. CT Page 8203-ce
In constructing the house, East relied on the plans given to him by the plaintiff and drawn up by the architect as well as the plan prepared by Gerwick for the septic system. It is not disputed that East built the house in accordance with these plans. The house, as built, was approved by the town sanitarian and other inspectors. The actual location of the house on the lot was staked out by Coonrod. This location effectively established the elevation of the top of the foundation. The location had to be approved by the municipal inspector. The location also had to be shown on the plan of the septic system so as to depict the required distance between the well and the septic system.
In the design of the septic system, Gerwick was particularly concerned that the elevation at the top of the foundation should facilitate the flowage of waste water discharge from the house through the four inch PBC pipe located near the top of the foundation, down into the septic system. The plans of the septic system indicate that the top of the foundation was at thirty-two feet. The architect's plans did not establish the elevation of the house. These plans did, however, establish the depth of the cellar. East used both plans in the construction of the house.
In December, 1996, the plaintiff visited the house and was informed by East that there was twenty inches of water in the basement. East stated that he was surprised by the water and considered it an aberration. His surprise was based upon the fact that he knew of no other water problems in the area and the four test holes prepared and witnessed by Gerwick and the town sanitarian in December, 1995 showed no water. Also, the eighteen to twenty foot deep hole excavated by Avery for burial of stumps and rocks showed gravel and no water and the excavation for the foundation disclosed no water. East's expression of surprise at the flooding is confirmed by the fact that he left some of his electrical equipment in the basement, not expecting water to seep into that area. His equipment was ruined. East was aware, however, that the original subdivision plans showed three test holes. Two of these test holes indicated no mottling. One of these test holes, however, indicated mottling at thirty-two foot elevation indicating possible seasonal high water at that elevation.
Solutions to the flooding problem were discussed by East with the town authorities and with Gerwick. Subsequently, East recommended two solutions to the plaintiff. The first solution was to fill in the basement and convert it into a five foot crawl space. This option was rejected by the plaintiff. The second solution was a system of pumps and pipes to take the water away from the house. Plaintiff opted for this system. East constructed this system which involved cutting the basement floor and installing one or two pumps and a pipe to move the water through an underground pipe away from the house. At least one of the CT Page 8203-cf pumps was a heavy duty machine not normally used for such purposes. This system worked well, but the noise from the heavy duty pump interfered with the plaintiffs sleep. At the plaintiffs request, East replaced this pump with a quieter pump having a lesser capacity. On March 10, 1997, a temporary certificate of occupancy was issued by the town and East was paid the final increment on his contract.
 II
The first count of the complaint alleges that the plaintiff and East entered into an agreement for the construction of a single-family house by East on a lot owned by the plaintiff and located at 9 Fairway Lane, Old Lyme, Connecticut. In May, 1997, East had substantially completed the construction of the house and a certificate of occupancy was issued. The complaint further alleges that in the construction of the house, East "failed to follow reasonable construction practices and thereby breached his contract with the [p]laintiff [in two ways]: (a) he set the foundation of the home too low on the lot [and] (b) he failed to properly grade the lot so as to drain surface water from the home." The plaintiff further alleges in his complaint that as a result of this breach of contract, he suffered economic loss in the value of his home which was substantially reduced in value. It is further alleged that as a result of this breach of contract, the plaintiff has, and will in the future, be required to expend money to remove water from the interior of the building and to redirect surface water away from the dwelling unit.
The evidence indicates that the elevation at the top of the foundation was set at thirty-two feet. As general contractor, it was the responsibility of East to set the elevation of the foundation in accordance with the plans and specifications provided to him and approved by the municipal authorities. The architectural blueprints did not specify the elevation of the top of the foundation. The plan of the septic system provided by Gerwick did reflect that the top of the foundation was to be at thirty-two feet. This elevation appears to have been established by Coonrod and incorporated into the septic system.
Since the elevation of the foundation was set in the approved plans for the septic system, it was East's obligation to construct the foundation at the elevation established and to make certain that the basement was in accordance with the architectural drawing. All evidence indicates that East did so. It cannot be found that he violated the contract. All evidence indicates that he followed the contract to the letter. Hunterv. Smith, 7 Conn. Sup. 157, 159 (1939). "A contractor satisfies its contractual duties where it performs its contract work in accordance with the plans and specifications, even though the method or performance required under such plans and specifications does not produce a CT Page 8203-cg defect-free product." Gilbane Building Co. v. Stamford Towers LimitedPartnership, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. CV 91 0118788 (November 18, 1996, Ryan, J.).
This conclusion does not resolve the claim. East could be liable in negligence for a breach of a duty which arose out of his contractual relationship. When East entered into the contract with the plaintiff to erect the house on the plaintiffs lot, he was "under a duty to exercise that degree of care which a skilled builder of ordinary prudence would have exercised under the same or similar conditions." Calderwood v.Bender, 189 Conn. 580, 584, 547 A.2d 313 (1983). See also Scribner v.O'Brien, Inc., 169 Conn. 389, 400, 363 A.2d 160 (1975). In constructing the house, East, an experienced builder, knew that the house was being built on an almost flat lot. As shown on the plan of the septic system, the contour lines on the rear of the lot and at the front of the house are thirty-two feet with a slight slope away from the house towards the southwesterly corner of the lot. East's observations and experience in the construction of the house were negative to the anticipation of any flooding likely to occur. He must have been aware, however, that the original developer's tests on the lot indicated mottling at thirty-two feet, which could indicate seasonal flooding.
Under the circumstances, it was incumbent upon the plaintiff to establish the duty of care which a skilled builder of ordinary prudence should exercise. Where a person such as East is alleged to have a particular skill and expertise that is beyond the knowledge of an ordinary trier of facts, expert testimony is required. Santopietro v. New Haven,239 Conn. 207, 226, 682 A.2d 106 (1996); Monterose v. Cross,60 Conn. App. 655, 658, 760 A.2d 1013 (2000).
"As a general rule, a plaintiff cannot prevail in a malpractice action in Connecticut unless he presents expert testimony to establish the standard of proper professional skill or care. The requirement of expert testimony in malpractice cases serves to assist lay people, such as members of the jury and the presiding judge, to understand the applicable standard of care and to evaluate the defendant's actions in light of that standard." (Internal quotation marks omitted.) Paul v. Gordon,58 Conn. App. 724, 727, 754 A.2d 851 (2000). "There is an exception to this rule, however, where there is such an obvious and gross want of care and skill that the neglect is clear even to a lay person." (Internal quotation marks omitted.) Id. That exception does not apply here.
The existence of a duty on the part of East, what that duty consisted of, what his obligations were to exercise due care and whether any breach of such duty caused the damages complained of are matters about which the court cannot speculate. In the absence of such evidence, it must be found CT Page 8203-ch that the plaintiff has failed to prove the allegation.
The first count also alleges that East violated the contract by improperly grading the lot so as to drain the surface water away from the house. In this connection, there was some evidence that surface water contributed to the water in the basement. Under the contract, however, East was required to do only the rough grating. The final finish grating was done by Maureen Haleley-Jones, doing business as The English Lady. Haleley was hired directly by the plaintiff and had no direct connection with East. The plaintiffs expert, Paul Biscutti, a civil engineer, who testified principally concerning damages, stated that the lot was very flat with poor drainage characteristics inadequate to carry off the surface water. From this testimony, it could be inferred that the condition resulting from improper grading contributed to the accumulation of water in the plaintiffs basement. Biscutti, however, could not say, and the court cannot determine, whether this condition resulted from the rough grating performed by East or the finish grating performed by Haleley.
It must then be found that the plaintiff has failed to prove the allegation that East failed to properly grade the lot so as to drain surface waters away from the house thereby causing the damage of which the plaintiff complains.
 III
The third count of the complaint alleges professional negligence against Gerwick. It is undisputed that East engaged Gerwick to design the septic system. The plaintiff was not directly involved in this transaction.
In the complaint, it is alleged that Gerwick was professionally negligent in providing advice and direction in the placement of the foundation on the lot and the elevation of the basement floor. It is further alleged that as a result of the advice and direction provided by Gerwick, East placed the plaintiffs home on the lot in such a way that the water table was higher than the floor of the cellar, thereby creating a chronic water problem in the cellar. Additionally, it is alleged that as a result of Gerwick's negligence the value of the plaintiffs home has been substantially reduced.
As previously discussed, "[w]hen a topic requiring special experience of an expert forms a main issue in the case, the evidence on that issue must contain expert testimony or it will not suffice." (Internal quotation marks omitted.) Monterose v. Cross, supra, 60 Conn. App. 658. "In cases involving claims of professional negligence . . . expert CT Page 8203-ci testimony is essential to establish both the standard of skill and care applicable and that the defendant failed to conform to the standard, as these matters are outside the knowledge of the jury [and the presiding judge]. Mather v. Griffin Hospital, 207 Conn. 125, 131, 540 A.2d 666
(1988). . . . In a case against an engineer, it is incumbent upon the plaintiff to produce evidence as to what a skilled engineer of ordinary prudence engaged in the same line of business would have exercised in the same or similar circumstances. Goodrich Oil Burner [Manufacturing] Co.v. Cooke, 126 Conn. 551, 553, 12 A.2d 833 (1940). . . ." (Citations omitted; internal quotation marks omitted.) Matyas v. Minck,37 Conn. App. 321, 326-27, 655 A.2d 1155 (1995).
In the present case, the plaintiff produced no expert testimony in this regard. The court, therefore, finds that the plaintiff has failed to prove his claim of professional negligence against Gerwick.
The court finds that the plaintiff has failed to prove the allegations of his complaint. In accordance with the foregoing, judgment may enter for the defendants.
Joseph J. Purtill, Judge Trial Referee