WESLEY S. SPEARS *v.* JOSEPH S. ELDER
(AC 30988)

DiPentima, C. J., and Robinson and Hennessy, Js.

Argued April 20—officially released October 5, 2010

*William F. Gallagher*, for the appellant (defendant).

*Wesley S. Spears*, pro se, the appellee (plaintiff).

*Opinion*

DiPENTIMA, C. J. This appeal arises from an unusual and unfortunate dispute between two attorneys practicing law in Connecticut. The defendant, Joseph S. Elder, appeals from the judgment of the trial court rendered in favor of the plaintiff, Wesley S. Spears, following a jury trial. On appeal, Elder claims that the court improperly (1) excluded certain evidence regarding Spears' reputation and credibility, (2) failed to give a requested instruction on proximate and intervening cause and (3) charged the jury on three different theories of slander per se. With respect to the majority of Elder's appellate issues, we conclude that application of the general verdict rule prohibits our review on the merits. As to the remaining claim that the court's evidentiary ruling improperly prevented Elder from impeaching Spears' credibility, we conclude that because it was not raised at trial, it too is unreviewable. Accordingly, we affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The facts underlying this appeal occurred on July 26, 2004, when two Plainville police officers, John Quilter and Michael Duval, were assigned to secure the residence of Erik Krajewski. Suspecting Krajewski of cultivating marijuana, the police had applied for a warrant to search his home. While the police awaited a determination on the warrant application, Krajewski returned to his home. Duval blocked the door and instructed Krajewski that he could not enter the residence.

Krajewski spoke on a cellular telephone with Elder and indicated that the police would not let him enter his residence. Elder indicated to Krajewski that, without a warrant, the officers could not prevent him from entering. As Krajewski attempted to place his key in the front door, Quilter warned him that he would be arrested if he entered the home. Although Krajewski appeared uncertain as to whether he should continue his efforts to get into the residence, he eventually opened the door. A struggle between the officers and Krajewski ensued, ending when Krajewski managed to gain entry into the residence and locked the door. As a result of this altercation, Duval sustained an injury to his arm.

In order to prevent the destruction of evidence, the officers forced their way into the residence and observed Krajewski flushing marijuana down the toilet. After a second struggle, the officers subdued Krajewski and placed him in custody. At this time, Dean Cyr, a Plainville police sergeant, arrived on the scene. Cyr was upset that officers had allowed Krajewski to get into the residence. Krajewski indicated to Cyr that his attorney had told him that he could enter the home. Cyr took custody of Krajewski's cellular telephone and answered an incoming call while noting the telephone number on the caller identification. After Cyr identified

himself as a member of the police department, the caller terminated the call.

Cyr believed that the altercation could have been avoided and was disturbed that Duval had sustained an injury. Thus, he wanted to determine the identity of the person who had advised Krajewski to enter the home, contrary to the express orders of the two officers. The next day, Cyr called the number that he had recorded from Krajewski's cellular telephone and posed as a prospective client. When the call was answered and Cyr asked to whom he was speaking, Elder responded, "Wes Spears."

On August 25, 2004, Cyr made a second call to Elder's cellular telephone, which was recorded, and the following conversation occurred:

"Elder: Hello.

"Cyr: Attorney Spears.

"Elder: Who?

"Cyr: Attorney Spears?

"Elder: Yes.

"Cyr: Hi. It's Sergeant Dean Cyr of the Plainville police. How are you?

"Elder: Good. How are you?

"Cyr: Good. I'm conducting an investigation which you're involved in. I kind of need to speak to you, maybe in the next couple days or so, if you can come down [to the police station].

\* \* \*

"Cyr: Well, it's some of the advice you gave your client . . . and one of the cops ended up getting hurt. . . . Well, I wanted to talk about, you know, your involvement that day. There was a police setup around

the house and you told him to go into the house and ignore the police."

Cyr, thinking he was speaking to Spears, stated that he intended to apply for an arrest warrant, and if unsuccessful, he would file a complaint with the statewide grievance committee.[1] After his arrest warrant application was denied, Cyr filed a grievance against Spears. Spears learned of the telephone number used by Cyr in his investigation and called the number, reaching Deborah Pizzonia. Pizzonia informed Spears that she had just been assigned that number and had been receiving telephone calls for Elder. Later, Spears asked Elder if he had impersonated him. Elder denied doing so.[2] As a result of this denial, Spears mistakenly believed that Cyr was attempting to "frame" him. Spears filed an action against Cyr and the town of Plainville. While conducting a deposition of Cyr in that separate action, Spears heard the recorded telephone conversation between Cyr and Elder where Elder had impersonated Spears.

On June 16, 2006, Spears commenced this action against Elder by way of a six count claim alleging impersonation, defamation, slander, libel, fraud and legal malpractice.[3] During the trial where both parties represented themselves, Spears proceeded with two counts, defamation by way of slander and fraud. Neither party submitted interrogatories to the jury, which returned a general verdict in favor of Spears. The jury awarded Spears $32,000 in general damages and $41,000 in punitive damages. The court denied Elder's motion

---

[1] Cyr did not suspect that he actually had spoken to Elder until approximately seven months after the incident.

[2] In Spears' written response to the grievance, he stated that Elder had indicated that Elder represented Krajewski and that Elder never had impersonated Spears.

[3] In his answer, Elder denied all of the allegations of Spears' complaint and did not file any special defenses.

to set aside the verdict, accepted the jury's award and rendered judgment accordingly. This appeal followed.

On appeal, Elder's claims fall within two broad categories: improper evidentiary rulings and improper jury instructions. Prior to oral argument, the appellate clerk's office sent the parties a letter instructing them to be prepared to address whether the general verdict rule precludes review of Elder's issues.[4] After considering the arguments presented, we conclude that the general verdict rule precludes our review of the majority of issues raised by Elder. As to the remaining issue, we decline to afford it appellate review because Elder failed to raise it at trial. Accordingly, we affirm the judgment of the trial court.

In *Dowling* v. *Finley Associates, Inc.*, 248 Conn. 364, 727 A.2d 1245 (1999), our Supreme Court summarized the general verdict rule. "Under the general verdict rule, if a jury renders a general verdict for one party, and no party requests interrogatories, an appellate court will presume that the jury found every issue in favor of the prevailing party. . . . Thus, in a case in which the general verdict rule operates, if any ground for the verdict is proper, the verdict must stand; only if every ground is improper does the verdict fall. . . . The rule rests on the policy of the conservation of judicial resources, at both the appellate and trial levels. . . .

"On the appellate level, the rule relieves an appellate court from the necessity of adjudicating claims of error that may not arise from the actual source of the jury verdict that is under appellate review. In a typical general verdict rule case, the record is silent regarding whether the jury verdict resulted from the issue that the appellant seeks to have adjudicated. Declining in

---

[4] We note that neither party sought permission to file supplemental briefs with respect to the general verdict issue.

such a case to afford appellate scrutiny of the appellant's claims is consistent with the general principle of appellate jurisprudence that it is the appellant's responsibility to provide a record upon which reversible error may be predicated. . . .

"In the trial court, the rule relieves the judicial system from the necessity of affording a second trial if the result of the first trial potentially did not depend upon the trial errors claimed by the appellant. Thus, unless an appellant can provide a record to indicate that the result the appellant wishes to reverse derives from the trial errors claimed, rather than from the other, independent issues at trial, there is no reason to spend the judicial resources to provide a second trial. . . .

"Therefore, the general verdict rule is a rule of appellate jurisprudence designed to further the general principle that it is the appellant's responsibility to provide a record upon which reversible error may be predicated. . . . A party desiring to avoid the effects of the general verdict rule may elicit the specific grounds for the verdict by submitting interrogatories to the jury. . . .

"This court has held that the general verdict rule applies to the following five situations: (1) denial of separate counts of a complaint; (2) denial of separate defenses pleaded as such; (3) denial of separate legal theories of recovery or defense pleaded in one count or defense, as the case may be; (4) denial of a complaint and pleading of a special defense; and (5) denial of a specific defense, raised under a general denial, that had been asserted as the case was tried but that should have been specially pleaded." (Citations omitted; internal quotation marks omitted.) Id., 371–72; see also *Curry* v. *Burns*, 225 Conn. 782, 789–90, 626 A.2d 719 (1993); *U. B. Vehicle Leasing, Inc.* v. *Davis*, 90 Conn. App. 206, 211–13, 876 A.2d 1222 (2005).

Here, Spears presented evidence to prove two distinct causes of action against Elder, defamation by slander and fraud. "A defamatory statement is defined as a communication that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him . . . . To establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." (Citations omitted; internal quotation marks omitted.) *Cweklinsky* v. *Mobil Chemical Co.*, 267 Conn. 210, 217, 837 A.2d 759 (2004); see also M. Taylor & D. Krisch, Encyclopedia of Connecticut Causes of Action (2009) p. 14.

We have defined fraud as "[d]eceit, deception, artifice, or trickery operating prejudicially on the rights of another, and so intended, by inducing him to part with property or surrender some legal right. . . . Anything calculated to deceive another to his prejudice and accomplishing the purpose, whether it be an act, a word, *silence*, the suppression of the truth, or other device contrary to the plain rules of common honesty." (Emphasis in original; internal quotation marks omitted.) *Garrigus* v. *Viarengo*, 112 Conn. App. 655, 669, 963 A.2d 1065 (2009). "Under the common law . . . it is well settled that the essential elements of fraud are: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury. . . . Also, [i]t has been repeatedly held that where a party makes false representations to another with the intent or knowledge that they be exhibited or repeated to a third

party for the purpose of deceiving him, the third party, if so deceived to his injury, can maintain an action in tort against the party making the false statements . . . ." (Citations omitted; internal quotation marks omitted.) *H & L Chevrolet, Inc.* v. *Berkley Ins. Co.*, 110 Conn. App. 428, 440, 955 A.2d 565 (2008); see also M. Taylor & D. Krisch, supra, pp. 19–20.

The jury heard evidence and received instructions from the court with respect to the two distinct causes of action. No interrogatories were submitted to the jury. Further, the verdict form signed by the foreperson of the jury stated in relevant part: "Use this verdict form if the jury unanimously finds the defendant liable for defamation by way of slander and/or fraud." It is clear from the record that the jury could have reached its verdict for Spears by two independent means, either defamation by slander or fraud.[5] Under these circumstances, application of the general verdict rule requires that Elder's appellate claims affect both causes of action; otherwise, we do not address the merits and will affirm the judgment of the trial court. See *DeGennaro* v. *Tandon*, 89 Conn. App. 183, 199–200, 873 A.2d 191, cert. denied, 274 Conn. 914, 879 A.2d 892 (2005). Put another way, "in a case in which the general verdict rule operates, if any ground for the verdict is proper, the verdict must stand; only if every ground is improper does the verdict fall." *Turturino* v. *Hurley*, 98 Conn. App. 259, 262, 907 A.2d 1266 (2006); see also *Monterose* v. *Cross*, 60 Conn. App. 655, 661, 760 A.2d 1013 (2000) ("[t]he general verdict rule operates to prevent an appellate court from disturbing a verdict that may have been reached under a cloud of error, but is nonetheless valid

---

[5] "A party desiring to avoid the effects of the general verdict rule may elicit the specific grounds for the verdict by submitting interrogatories to the jury. Alternatively, if the action is in separate counts, a party may seek separate verdicts on each of the counts." (Internal quotation marks omitted.) *Segale* v. *O'Connor*, 91 Conn. App. 674, 679, 881 A.2d 1048 (2005).

because the jury may have taken an untainted route in reaching its verdict" [internal quotation marks omitted]). Therefore, we turn to the specific claims raised by Elder on appeal to determine whether the general verdict rule prevents us from reviewing them on the merits.

We begin with Elder's second and third claims, both pertaining to the court's instructions to the jury. Specifically, Elder claims that the court improperly failed to give a requested instruction on proximate and intervening cause and charged the jury on three different theories of slander per se.[6] We quickly dispose of the latter claim on the basis of the general verdict rule. Elder's claim that the trial court committed plain error by instructing the jury[7] on three different theories of slander per se when the evidence supported only one theory lacks any connection to the fraud cause of action. We decline to review this claim, therefore, on the basis of the general verdict rule.

Elder also claims that the court improperly failed to give a requested instruction on proximate and intervening cause. Elder had filed a request to charge seeking,

---

[6] "When the defamatory words are actionable per se, the law conclusively presumes the existence of injury to the plaintiff's reputation. He is required neither to plead nor to prove it. . . . The individual plaintiff is entitled to recover, as general damages, for the injury to his reputation and for the humiliation and mental suffering which the [defamation] caused him." (Internal quotation marks omitted.) *DeVito* v. *Schwartz*, 66 Conn. App. 228, 234–35, 784 A.2d 376 (2001).

[7] The court instructed the jury as follows: "In order for the plaintiff to establish evidence that the defendant's conduct was slanderous per se, the plaintiff must prove by a preponderance of the evidence that the defendant made the statement to a third person, which identified the plaintiff, such that it would be reasonably understood that it was about the plaintiff and either: one, the statement falsely charges someone with having committed a crime that involves moral turpitude or for which an infamous penalty is attached; two, the statement falsely charges a professional person with general incompetence; or, three, the statement falsely charges a person with conduct or characteristics that would adversely affect him in his trade or business. If you find that the defendant's conduct was slander per se, then

inter alia, an instruction that Spears' injury was caused by Spears himself when he filed a notice with the town of Plainville of his intention to sue the town and Cyr. A review of Elder's brief reveals, however, that this issue is limited to the defamation by slander cause of action and is not directed toward the fraud count. Specifically, Elder argues in his brief: "[T]he trial court's instruction on causation was little more than a pithy statement that the jury had to find that 'the plaintiff's reputation suffered injury as a result of the [defamatory] statement.' Absent evidence of proximate cause that Spears sustained even *general damages as a result of Elder's alleged slander*, Spears was entitled to nothing more than nominal damages." (Emphasis added.) Because Elder's claim regarding the court's instruction on causation does not apply to the fraud count, we conclude that review of the merits is unnecessary due to the general verdict rule.

We now turn to Elder's claim that the court improperly excluded certain evidence regarding Spears' reputation. Specifically, he argues that the court should have admitted evidence of Spears' arrests for extortion and the promotion of prostitution and results from an Internet search conducted with respect to Spears' reputation. With respect to the latter, we again conclude that a careful review of Elder's brief makes it clear that his claim relates solely to the defamation by slander cause of action; mainly, the fourth element of the tort. See *Cweklinsky* v. *Mobil Chemical Co.*, supra, 267 Conn. 217. Elder's brief states: "In order to sustain injury to one's reputation, the claimant must possess a relatively good reputation before a tortfeasor can defame the claimant. Whether Spears had such a relatively good reputation (as he claimed throughout [the] trial) was material to the determination of this defamation case."

---

you may award general damages and the plaintiff need not prove actual injury."

There is nothing to indicate that this claim applied also to Spears' fraud count. Accordingly, we decline to review the merits on the basis of the general verdict rule.

With respect to the admissibility of Spears' arrest record, the following additional facts are necessary. On October 10, 2008, Spears filed a motion in limine to preclude Elder from introducing any evidence of Spears' 1996 arrest. He also sought the redaction of any mention of this arrest from anything admitted into evidence. He argued that General Statutes § 54-142a provided the authority for granting this motion.[8] A colloquy ensued, and Elder represented that the purpose of this evidence was to impeach Spears. The court noted that there was no evidence that Spears had been convicted of a crime, only that he had been arrested. Further, the court observed that these arrests did not pertain to Spears' credibility. The court ruled: "They're not—so in any event, for purposes of this—for purposes of this particular part of the case, which is . . . Spears' case-in-chief and the kind of evidence that he indicates that he's planning to present on his own behalf, I don't see that this can be used. So, to that extent, to that limited extent, I'm granting that motion in limine as to this testimony."[9]

---

[8] General Statutes § 54-142a (a) provides: "Whenever in any criminal case, on or after October 1,1969, the accused, by a final judgment, is found not guilty of the charge or the charge is dismissed, all police and court records and records of any state's attorney pertaining to such charge shall be erased upon the expiration of the time to file a writ of error or take an appeal, if an appeal is not taken, or upon final determination of the appeal sustaining a finding of not guilty or a dismissal, if an appeal is taken. Nothing in this subsection shall require the erasure of any record pertaining to a charge for which the defendant was found not guilty by reason of mental disease or defect or guilty but not criminally responsible by reason of mental disease or defect." General Statutes (Rev. to 2007) § 54-142a (e) provides in relevant part that "[a]ny person who shall have been the subject of such an erasure shall be deemed to have never been arrested within the meaning of the general statutes with respect to the proceedings so erased and may so swear under oath."

[9] Elder's evidence of Spears' arrest record appears to have been limited to materials found by searching the Internet.

During cross-examination, Spears stated that he had never been arrested. Outside the presence of the jury, the court ruled, with respect to this issue, that it had rejected Spears' argument with respect to § 54-142a and denied the motion in limine. After further cross-examination, Spears again denied having been arrested in 1996. He subsequently denied having been arrested with respect to three separate assault charges.[10]

On appeal, Elder argues that he should have been permitted to introduce evidence of the 1996 arrest to impeach Spears' credibility. In addition, he argues that he should have been permitted to introduce evidence relevant to the issue of whether Spears "enjoyed a good reputation before the alleged defamation by Elder." To the extent that Elder argues that the evidence should have been admitted with respect to Spears' reputation, an element of the tort of defamation by slander, we again decline to review it due to the application of the general verdict rule. Elder's argument that the court should have allowed evidence to impeach Spears' credibility applies to both causes of action, and, therefore, the general verdict rule does not apply. See, e.g., *Monterose* v. *Cross*, supra, 60 Conn. App. 661.

A review of the record reveals that the court's ruling was directed to prohibit Elder from impeaching Spears on the basis of prior criminal activity. Although the parties did not state so explicitly,[11] it is clear that § 6-7 of the Connecticut Code of Evidence was implicated. "For the purpose of impeaching the credibility of a

---

[10] We note that Spears' testimony strongly suggested to the jury that he, in fact, had been arrested. Specifically, Spears stated: "I was accused of two things that were completely untrue. This happened in 1996. I was accused of extortion; I was accused of promoting prostitution. The charges were completely baseless and false, just like your charges. It shows just how easy you can get arrested for the wrong things on false evidence."

[11] See, e.g., *State* v. *Banks*, 117 Conn. App. 102, 110, 978 A.2d 519, cert. denied, 294 Conn. 905, 982 A.2d 1081 (2009).

witness, evidence that a witness has been convicted of a crime is admissible if the crime was punishable by imprisonment for more than one year. In determining whether to admit evidence of a conviction, the court shall consider: (1) the extent of the prejudice likely to arise, (2) the significance of the particular crime in indicating untruthfulness, and (3) the remoteness in time of the conviction." Conn. Code Evid. § 6-7 (a); see also *State* v. *Swain*, 101 Conn. App. 253, 266–67, 921 A.2d 712, cert. denied, 283 Conn. 909, 928 A.2d 539 (2007). We point to the court's statements that there was only evidence of an arrest, not a conviction, and that the criminal charges did not "go to [Spears'] credibility." Further, the court noted that a certified copy of the record could be used to establish the prior conviction, a clear reference to § 6-7 (b) (2) of the Connecticut Code of Evidence. Spears indicated that he was addressing another topic, in response to which the court ruled: "We'll deal with that issue when we come to it, okay, because we're not dealing with that issue at this point." Thus, it is clear that this was the only matter addressed by the court in its ruling.

On appeal, Elder claims that the court's ruling prevented him from introducing evidence that directly contradicted Spears' testimony that he had never been arrested. This claim was never raised before the trial court. At no point during Elder's cross-examination did he ever attempt to introduce such evidence. We note that Practice Book § 60-5 provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial . . . ." Moreover, "[i]t is well settled that a trial court can be expected to rule only on those matters that are put before it." *State* v. *Jose G.*, 290 Conn. 331, 346, 963 A.2d 42 (2009). Put another way, "[t]o permit a party to raise a different ground on appeal than [that] raised during trial amounts to trial by ambuscade, unfair to both the trial court and

to the opposing party. . . . Inasmuch as the defendant raises a claim on appeal different from the one that he raised at trial, he is not entitled to review of his claim." (Citations omitted; internal quotation marks omitted.) *State* v. *Saunders*, 114 Conn. App. 493, 504, 969 A.2d 868, cert. denied, 292 Conn. 917, 973 A.2d 1277 (2009); see also *Curry* v. *Allan S. Goodman, Inc.*, 286 Conn. 390, 425, 944 A.2d 925 (2008). Accordingly, we decline to review this new evidentiary claim.

The judgment is affirmed.

In this opinion the other judges concurred.