DONNA TETREAULT ET AL. *v.*
MARY E. ESLICK ET AL.
(SC 17104)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

Argued March 9—officially released October 12, 2004

*William R. Moller*, for the appellants (plaintiffs).

*Thomas W. Boyce, Jr.*, for the appellees (defendants).

*Opinion*

PALMER, J. In this medical malpractice action, the plaintiffs, Donna Tetreault and Matthew T. Tetreault

(Matthew),[1] appeal[2] from the judgment rendered by the trial court following a jury verdict in favor of the defendants, Mary E. Eslick, a pediatrician, and Rena Cecchini, a nurse practitioner who was employed by Eslick. On appeal, the plaintiffs claim that the trial court improperly permitted the defendants to raise, and the jury to consider, their special defense of superseding cause. The defendants contend that the general verdict rule bars our review of the plaintiffs' claim. We agree with the defendants and, therefore, affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. In June, 1997, Donna Tetreault brought her son, Matthew, then two years old, to Eslick's medical office in Norwich. Matthew exhibited a number of symptoms, including a body rash, fever, diarrhea, decreased appetite and fatigue. Cecchini examined Matthew and concluded that he was suffering from dermatitis. Cecchini initially advised Donna Tetreault to administer an over-the-counter antihistamine to Matthew. Cecchini examined Matthew again two days later, and Matthew was prescribed a prescription strength antihistamine and topical medication.

During the summer of 1997, Matthew's symptoms persisted. In September, 1997, Donna Tetreault took Matthew to the emergency department at The William W. Backus Hospital in Norwich, where emergency personnel observed swelling in Matthew's right knee. The attending physician ordered a test that subsequently revealed the presence of Lyme disease antibodies in Matthew's blood. Donna Tetreault brought Matthew

---

[1] Donna Tetreault brought this action as parent and next friend of her minor son, Matthew. Donna Tetreault also brought this action on her own behalf for damages arising from Matthew's injuries.

[2] The plaintiffs appealed to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

back to Eslick's office, and Eslick prescribed amoxicillin, an oral antibiotic that Matthew was to take for thirty days.

In early October, 1997, Matthew's father, Scott Tetreault, who was concerned about Matthew's condition, contacted the Lyme Disease Foundation (foundation). Upon the recommendation of the foundation, the Tetreaults took Matthew to see Charles Ray Jones, a pediatrician. After examining him, Jones recommended that Matthew's use of amoxicillin be discontinued and that he begin treatment with two other oral antibiotics, namely, Ceftin and Biaxin, for a period of approximately ten months. Although Matthew's symptoms persisted, Jones nevertheless continued the oral antibiotic treatment for more than four months. In March, 1998, Jones prescribed Rocephin, an antibiotic that is administered intravenously or intramuscularly.[3] Jones planned to continue this new course of treatment for a period of at least six months. This treatment required the surgical insertion of a catheter through Matthew's chest wall. Several weeks after Matthew started on Rocephin, he developed complications that ultimately led to the surgical removal of his gallbladder.

The plaintiffs initiated this action, alleging that the defendants negligently had failed to diagnose and to treat Matthew's Lyme disease in June, 1997, and that their negligence had caused Matthew's subsequent health problems. In addition, the plaintiffs alleged that the harm that Matthew had suffered as a result of the defendants' negligence had caused Donna Tetreault extreme mental anguish. The defendants denied the plaintiffs' allegations of negligence.

After reviewing medical records relating to Jones' treatment of Matthew, the defendants moved to amend

[3] In Matthew's case, Jones prescribed the intravenous administration of Rocephin.

their answer to include a special defense that Jones' treatment of Matthew was negligent and that Jones' negligence constituted a superseding cause of any injuries that Matthew had suffered. The trial court granted the defendants' motion over the plaintiffs' objection.

At trial, the defendants adduced evidence that their treatment of Matthew was not negligent and that, alternatively, Jones' treatment was a superseding cause of Matthew's injuries. Subsequently, in its charge to the jury at the close of the case, the trial court instructed the jury on the defendants' special defense. Before the case was submitted to the jury, the defendants requested that the trial court submit interrogatories to the jury. The trial court denied the defendants' request without objection by the plaintiffs.[4] The jury thereafter returned a general verdict for the defendants. The plaintiffs filed a motion to set aside the verdict claiming, inter alia, that the trial court improperly had permitted the defendants to file a special defense that Jones' negligence was a superseding cause of Matthew's injuries and improperly had instructed the jury as to that defense. The trial court denied the motion and rendered judgment for the defendants in accordance with the jury verdict. This appeal followed.

The gravamen of the plaintiffs' claim on appeal is that the trial court improperly permitted the defendants to raise, and the jury to consider, the special defense that Jones' allegedly negligent care and treatment of Matthew constituted a superseding cause of any injuries

---

[4] The record indicates that the defendants' request for interrogatories was the subject of an off-the-record conference in chambers. Following that conference, the defendants renewed their request for interrogatories in open court and on the record. The trial court asked the plaintiffs' counsel if he had any "feeling about [the defendants' request] one way or the other." The plaintiffs' counsel replied: "Well, I thought Your Honor had already decided—made up your mind on that." The trial court then denied the defendants' request.

that Matthew may have suffered as a result of any possible negligence by the defendants in failing promptly to diagnose and to treat Matthew's Lyme disease.[5] We do not reach the merits of the plaintiffs' claim because our review of that claim is barred by the general verdict doctrine.[6]

"Under the general verdict rule, if a jury renders a general verdict for one party, and [the party raising a claim of error on appeal did not request] interrogatories, an appellate court will presume that the jury found every issue in favor of the prevailing party. . . . Thus, in a case in which the general verdict rule operates, if any ground for the verdict is proper, the verdict must stand; only if every ground is improper does the verdict fall. . . . The rule rests on the policy of the conservation of judicial resources, at both the appellate and trial levels. . . .

"On the appellate level, the rule relieves an appellate court from the necessity of adjudicating claims of error that may not arise from the actual source of the jury

---

[5] Specifically, the plaintiffs contend that the trial court improperly: (1) permitted the defendants to assert a special defense of superseding cause; (2) instructed the jury with respect to the defendants' special defense; and (3) denied their motion to set aside the verdict in light of the foregoing improprieties. We note that, with respect to the third contention, the plaintiffs' motion to set aside the verdict included a claim of evidentiary impropriety not directly related to the defendants' special defense. Because the plaintiffs have failed to brief that claim on appeal, however, we deem it to be abandoned. E.g., *Updike, Kelly & Spellacy, P.C.* v. *Beckett*, 269 Conn. 613, 642–43, 850 A.2d 145 (2004).

[6] In *Barry* v. *Quality Steel Products, Inc.*, 263 Conn. 424, 860 A.2d 258 (2003), we recently concluded that, as a general matter, "the doctrine of superseding cause no longer serves a useful purpose in our jurisprudence when a defendant claims that a subsequent negligent act by a third party cuts off its own liability for the plaintiff's injuries." Id., 436. The defendants assert that *Barry* is inapplicable to the present case because *Barry* applies prospectively only and the trial court rendered judgment in this case before we issued our opinion in *Barry*. In light of our conclusion that the general verdict rule precludes our review of the merits of the plaintiffs' claim, our holding in *Barry* is irrelevant to our resolution of this appeal.

verdict that is under appellate review. In a typical general verdict rule case, the record is silent regarding whether the jury verdict resulted from the issue that the appellant seeks to have adjudicated. Declining in such a case to afford appellate scrutiny of the appellant's claims is consistent with the general principle of appellate jurisprudence that it is the appellant's responsibility to provide a record upon which reversible error may be predicated. . . .

"In the trial court, the rule relieves the judicial system from the necessity of affording a second trial if the result of the first trial potentially did not depend upon the trial errors claimed by the appellant. Thus, unless an appellant can provide a record to indicate that the result the appellant wishes to reverse derives from the trial errors claimed, rather than from the other, independent issues at trial, there is no reason to spend the judicial resources to provide a second trial. . . .

"Therefore, the general verdict rule is a rule of appellate jurisprudence designed to further the general principle that it is the appellant's responsibility to provide a record upon which reversible error may be predicated. . . . A party desiring to avoid the effects of the general verdict rule may elicit the specific grounds for the verdict by submitting interrogatories to the jury. . . .

"This court has held that the general verdict rule applies to the following five situations: (1) denial of separate counts of a complaint; (2) denial of separate defenses pleaded as such; (3) denial of separate legal theories of recovery or defense pleaded in one count or defense, as the case may be; (4) denial of a complaint and pleading of a special defense; and (5) denial of a specific defense, raised under a general denial, that had been asserted as the case was tried but that should have been specially pleaded." (Internal quotation marks

omitted.) *Kalams* v. *Giacchetto*, 268 Conn. 244, 254–55, 842 A.2d 1100 (2004).

In their amended answer, the defendants denied the allegations of the complaint and asserted the special defense of superseding cause. This case, therefore, falls squarely within the fourth situation to which the general verdict rule applies. Without jury interrogatories, we are unable to discern whether the jury found that the plaintiffs had failed to prove the negligence allegations of their complaint or whether the jury found that the defendants had prevailed on their special defense of superseding cause. We therefore must presume, in accordance with the general verdict rule, that the jury based its verdict on both grounds. Because the plaintiffs have raised no challenge to the jury verdict insofar as that verdict may have been predicated on the plaintiffs' failure to establish the defendants' negligence, the general verdict rule precludes appellate review of the plaintiffs' claim regarding the defendants' special defense.[7]

The judgment is affirmed.

In this opinion the other justices concurred.

---

[7] We note that the plaintiffs asserted in their appellate brief that they took ten exceptions to the trial court's jury instructions. Beyond that bare assertion, however, the plaintiffs' brief is devoid of any mention either of those ten exceptions or of the purportedly objectionable instructions to which those exceptions were directed. The plaintiffs, therefore, have waived any claim that they may have had regarding the propriety of those instructions. See, e.g., *In re Jeffrey C.*, 261 Conn. 189, 197 n.5, 802 A.2d 772 (2002) ("[w]here an issue is merely mentioned, but not briefed beyond a bare assertion of the claim, it is deemed to have been waived" [internal quotation marks omitted]).