## U. B. VEHICLE LEASING, INC. *v.* SCOTT DAVIS ET AL.
### (AC 25359)

Bishop, McLachlan and Peters, Js.

Argued April 18—officially released July 12, 2005

*Anthony B. Corleto*, with whom, on the brief, was *Ryan P. Sullivan*, for the appellant (plaintiff).

*Robert O. Hickey*, with whom, on the brief, was *Lauren Abbate*, for the appellees (defendants).

*Opinion*

McLACHLAN, J. In this action for indemnity arising out of a motor vehicle lease, the plaintiff, U. B. Vehicle Leasing, Inc., appeals from the judgment rendered in favor of the defendants, lessee Scott Davis and his au pair, Jelena Lektorova, who was the operator of the vehicle at the time it was involved in an accident. The plaintiff claims that the court improperly (1) denied its motion for default against Lektorova, (2) failed to set aside the verdict on the contractual indemnity count against Davis, (3) charged the jury on "contract ambiguity" and (4) denied the plaintiff's motion for summary judgment. We affirm the judgment of the trial court.

On February 28, 1998, Davis leased a Chrysler minivan from Central Avenue Chrysler in Yonkers, New York. Thereafter, Central Avenue Chrysler assigned its interests in the lease to the plaintiff. The lease was for a term of three years and included the following paragraph that is at the center of this action: "48. Indemnity, Fines and Tickets. Except as otherwise provided herein with respect to a total loss of the Vehicle caused by its theft or physical damage . . . you will indemnify and hold harmless Lessor . . . from any loss or damage to the Vehicle and its contents. *You also will indemnify and hold harmless Lessor . . . from all claims, losses, injuries, expenses and costs related to the use, maintenance, or condition of the Vehicle.* You will promptly pay all fines and tickets imposed on the Vehicle or its driver. If you do not pay, you will reimburse

us and, unless prohibited by law, pay a $20 administration fee for every fine, ticket, or penalty that must be paid on your behalf." (Emphasis added.)

On March 25, 1999, Lektorova was operating the vehicle when it was involved in a three car accident on Interstate 95 in Greenwich. The operators of the other vehicles, George Green and Jeffrey Eakley, were injured. On May 6, 1999, Green and Eakley initiated an action in the United States District Court for the Southern District of New York (New York action), naming as defendants Davis, Lektorova, the plaintiff and Rachel Volpone, Davis' wife. Davis' insurance carrier, Atlantic Mutual Insurance Company (Atlantic Mutual), defended the action. Prior to trial, Atlantic Mutual entered into a stipulation with Green and Eakley under which the action was withdrawn against Davis, Lektorova and Volpone. The New York action proceeded to trial against the plaintiff and, on December 15, 2000, the jury returned a verdict in favor of Green and Eakley totaling $1,625,000. Following a remittitur that reduced the amount of the award to $1,570,000, judgment was rendered in favor of Green and Eakley. Atlantic Mutual paid the judgment to the policy limit of $1.3 million, leaving the plaintiff responsible for the remaining $270,000 of the judgment.

Thereafter, on December 5, 2000, the plaintiff initiated this three count action seeking damages under theories of contractual and common-law indemnity against Davis and common-law indemnity against Lektorova. As a special defense, the defendants asserted that "[t]he contractual provision relied upon by the plaintiff in the First Count of the Complaint is unenforceable and of no force and effect in that it violates public policy, is vague and ambiguous, and is procedurally and substantively unconscionable." The court denied cross motions for summary judgment because

under New York law,[1] "[a] question of fact exist[ed] as to how a reasonable customer would have interpreted the [indemnity] provision . . . ." (Internal quotation marks omitted.)

The matter proceeded to trial, and the jury returned a general verdict for the defendants on each of the three counts individually. The court denied the plaintiff's posttrial motions to set aside the verdict and for a new trial and rendered judgment in the defendants' favor. The plaintiff now appeals. Additional facts will be provided as necessary to address the plaintiff's specific claims.

## I

The plaintiff first claims that the court improperly denied its motion for default against Lektorova due to her failure to appear at a deposition.[2] We are not persuaded.

"We review the court's denial of the plaintiff's motion for default under an abuse of discretion standard. We afford great weight to the court's ruling and indulge every reasonable presumption that the court reasonably concluded as it did." *Otwell* v. *Bulduc*, 76 Conn. App. 775, 777, 821 A.2d 793 (2003).

The record reveals the following. On Monday, January 26, 2004, one week before trial was scheduled to begin, the plaintiff noticed Lektorova's deposition to be conducted on the following Monday, February 2, 2004. Counsel for the defendants advised counsel for the plaintiff that Lektorova could not be produced for a deposition on that date. Counsel for both sides

[1] The substantive law of New York was applied at trial, as it is on appeal, due to the substantial contacts with New York and a choice of law provision in the lease agreement.

[2] The plaintiff later reasserted its arguments regarding default as a ground to set aside the verdict. The court denied that motion as well.

appeared and made a record before a stenographer when, as expected, Lektorova did not appear. Counsel for the defendants stated on the record that Lektorova's availability never was confirmed and indicated that had there been adequate notice, a protective order could have been sought.[3] Although the trial was continued for three weeks, the plaintiff never renoticed Lektorova's deposition. The plaintiff did not file the motion for default for almost another month, after jury selection had been completed and the trial was to begin the next day. The court denied the motion.

The record lacks any transcript or articulation of the court's decision denying the plaintiff's motion for default. On the record before us, with the facts available to us, we cannot conclude that the court abused its discretion. It reasonably could have considered the timing of both the issuance and receipt of the notice of deposition, and the fact that the motion for default was made on the eve of trial. See *Amba Realty Corp.* v. *Kochiss*, 67 Conn. App. 149, 152–53, 786 A.2d 1137 (2001) (concluding that court did not abuse discretion in granting motion for default where limited record revealed no basis for court's decision other than face of motion; burden on appellant to produce record), cert. denied, 259 Conn. 912, 789 A.2d 993 (2002).

## II

We consider the plaintiff's next two claims together due to the application of the general verdict rule.[4] The

[3] Counsel for the defendants indicated that the actual receipt of the notice of deposition did not occur until Friday, January 30, 2004.

[4] In *Curry* v. *Burns*, 225 Conn. 782, 626 A.2d 719 (1993), the Supreme Court limited the application of the general verdict rule to the following scenarios: "(1) denial of separate counts of a complaint; (2) denial of separate defenses pleaded as such; (3) denial of separate legal theories of recovery or defense pleaded in one count or defense, as the case may be; (4) denial of a complaint and pleading of a special defense; and (5) denial of a specific defense, raised under a general denial, that has been asserted as the case was tried but that should have been specially pleaded." Id., 801. This case fits within the fourth category, the denial of a complaint and pleading of a special defense.

claims are that the court improperly refused to set aside the verdict as to Davis on the count of contractual indemnity and that the court improperly charged the jury on the issue of ambiguity. "[T]he so-called general verdict rule provides that, if a jury renders a general verdict for one party, and no party requests interrogatories,[5] an appellate court will presume that the jury found every issue in favor of the prevailing party." (Internal quotation marks omitted.) *Curry* v. *Burns*, 225 Conn. 782, 786, 626 A.2d 719 (1993). "The general verdict rule operates to prevent an appellate court from disturbing a verdict that may have been reached under a cloud of error, but is nonetheless valid because the jury may have taken an untainted route in reaching its verdict." *Sady* v. *Liberty Mutual Ins. Co.*, 29 Conn. App. 552, 558, 616 A.2d 819 (1992). "Thus, in a case in which the general verdict rule operates, if any ground for the verdict is proper, the verdict must stand; only if every ground is improper does the verdict fall." (Internal quotation marks omitted.) *Sheridan* v. *Desmond*, 45 Conn. App. 686, 689, 697 A.2d 1162 (1997).

There were two grounds, either or both of which could have caused the jury to find in favor of the defendants: either the plaintiff failed to prove the necessary elements of its prima facie case or the defendants proved their affirmative defense. We assume that the jury found in the defendants' favor as to both grounds. The plaintiff attacks each ground by claiming that the court improperly refused to set aside the verdict as to the contractual indemnity count against Davis and that the court improperly charged the jury on the issue of

---

[5] The defendants in this case requested jury interrogatories that were unrelated to the plaintiff's claim on appeal, to which the plaintiff did not object. The court, however, rejected the defendants' requested interrogatories, and the plaintiff offered none of its own. See *Tetreault* v. *Eslick*, 271 Conn. 466, 471–72, 857 A.2d 888 (2004) (party raising claim of error on appeal must have requested interrogatories to avoid application of general verdict rule).

ambiguity in the indemnity clause. If we find that the court's conclusion was proper with respect to either claim, our inquiry ends because we must assume that the jury found in favor of the defendants on that basis. *Conrad* v. *Erickson*, 41 Conn. App. 243, 248–49, 675 A.2d 906 (1996).

At the outset, we note that the plaintiff does not challenge the court's judgment as to the counts of common-law indemnity against Lektorova and Davis. That leaves only the count alleging contractual indemnity against Davis, which the plaintiff has attacked on both grounds necessary to overcome the general verdict rule.

We first consider the plaintiff's claim that the court improperly refused to set aside the verdict in favor of Davis on the count of contractual indemnity. We are not persuaded and, accordingly, do not reach the plaintiff's claim with respect to the court's charge due to the application of the general verdict rule.

Our standard of review of a court's denial of a motion to set aside the verdict is well settled. "[Appellate] review of a trial court's refusal to direct a verdict or to render judgment notwithstanding the verdict takes place within carefully defined parameters. We must consider the evidence, including reasonable inferences which may be drawn therefrom, in the light most favorable to the parties who were successful at trial . . . giving particular weight to the concurrence of the judgments of the judge and the jury, who saw the witnesses and heard the testimony . . . . The verdict will be set aside and judgment directed only if we find that the jury could not reasonably and legally have reached [its] conclusion. . . . A jury's verdict should be set aside only where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles. . . . A verdict should not be set aside where

the jury reasonably could have based its verdict on the evidence." (Citation omitted; internal quotation marks omitted.) *Coniglio* v. *White*, 72 Conn. App. 236, 240, 804 A.2d 990 (2002).

After reviewing the exhibits and the transcript of the trial, we are satisfied that the jury reasonably could have concluded that the plaintiff failed to prove its case for contractual indemnity against Davis. Specifically, the jury reasonably could have concluded that the plaintiff failed to prove its damages to a reasonable degree of certainty. "It is axiomatic that the burden of proving damages is on the party claiming them. . . . When damages are claimed they are an essential element of the plaintiff's proof and must be proved with reasonable certainty." (Internal quotation marks omitted.) *Coughlin* v. *Anderson*, 270 Conn. 487, 512, 853 A.2d 460 (2004); see also *Ashland Management, Inc.* v. *Janien*, 82 N.Y.2d 395, 403, 624 N.E.2d 1007, 604 N.Y.S.2d 912 (1993) (plaintiff required to prove damages with reasonable certainty). The evidence that the plaintiff put on was minimal, to say the least. There was no evidence regarding the accident. There was no evidence showing that the plaintiff paid a judgment in the New York action. There was no testimony from any employee or officer of the plaintiff or anyone involved in negotiating the lease agreement with Davis. The only witness the plaintiff called was Davis, who had only a vague understanding of what occurred in the New York action.[6]

The following excerpt of Davis' testimony on direct examination by counsel for the plaintiff represents the entirety of the evidence the plaintiff put on to prove its damages.

---

[6] The only evidence the plaintiff presented other than Davis' testimony was the lease agreement and, following the defendants' case, a portion of deposition transcript in which the plaintiff's general counsel, Halsey Collins, stated that the lease agreement was drafted to ensure conformity with regulations promulgated by the Federal Reserve.

"[The Plaintiff's Counsel]: So, you're aware that Jeffrey Eakley and George Green brought a lawsuit as a result of Ms. Lektorova's accident, correct?

"[The Witness]: I am aware.

"[The Plaintiff's Counsel]: And you were sued in that lawsuit, correct?

"[The Witness]: Yes.

"[The Plaintiff's Counsel]: And [the plaintiff] was sued in that lawsuit, correct?

"[The Witness]: Yes.

"[The Plaintiff's Counsel]: And are you aware of the disposition of that lawsuit? . . .

"[The Witness]: Yes.

"[The Plaintiff's Counsel]: What are you aware of?

"[The Witness]: I'm aware there was a finding for the plaintiff. . . .

"[The Plaintiff's Counsel]: Are you aware of what the extent of the damages were?

"[The Witness]: How much?

"[The Plaintiff's Counsel]: Yes.

"[The Witness]: I believe it was $1.6 million or thereabouts.

"[The Plaintiff's Counsel]: And are you aware that [the plaintiff] had to pay money to satisfy that claim? . . .

"[The Witness]: I'm aware that [it] had to pay $270,000."

On cross-examination, however, counsel for the defendants elicited from Davis the following statements, indicating that he lacked personal knowledge of the plaintiff's payment.

"[The Defendants' Counsel]: Were you in the court-room for that [case]?

"[The Witness]: No.

"[The Defendants' Counsel]: Do you have any first-hand knowledge of what transpired in that case? . . .

"[The Witness]: No.

"[The Defendants' Counsel]: So, you don't have any firsthand knowledge of what any of the parties in that case . . . were required to do as a result of a verdict or judgment? In other words, what they had to pay? Firsthand knowledge?

"[The Witness]: No.

"[The Defendants' Counsel]: Do you have any knowl-edge, firsthand knowledge, that [the plaintiff] paid any money as a result of what occurred in the case in New York?

"[The Witness]: Firsthand knowledge? No.

"[The Defendants' Counsel]: Are you aware that [the plaintiff] claims that it had to pay $270,000?

"[The Witness]: Yes.

"[The Defendants' Counsel]: Is that the extent of your firsthand knowledge with regard to what [the plaintiff's] obligations may have been after that case was con-cluded?

"[The Witness]: Yes."

On the basis of Davis' testimony both on direct and cross-examination, it is apparent that the only evidence that the plaintiff paid a $270,000 judgment in the New York action was the plaintiff's claim that it did so and Davis' awareness of that claim. Viewing the evidence in the light most favorable to sustaining the verdict, the jury reasonably could have concluded that the plaintiff

failed to prove its damages adequately. Accordingly, the court properly refused to set aside the verdict in favor of Davis on the plaintiff's claim of contractual indemnity.[7]

As noted, due to the application of the general verdict rule, we do not review the plaintiff's claim with respect to the court's charge on the defendants' defense of ambiguity. The jury reasonably could have concluded, and we must assume that it did, that the plaintiff failed to prove its case of contractual indemnity, thereby precluding appellate review of the plaintiff's claim with respect to the defendants' affirmative defense.

## III

The plaintiff next claims that the court improperly denied its motion for summary judgment on the ground that the indemnity provision of the lease agreement was ambiguous. We decline to review that claim.

It is well settled that "absent exceptional circumstances, a denial of a motion for summary judgment is not appealable where a full trial on the merits produces a verdict against the moving party. . . . The basis of this policy is that even if the motion is improperly denied, the error is not reversible; the result has merged into the subsequent decision on the merits. To hold

---

[7] The jury also reasonably could have concluded that the plaintiff failed to prove by a preponderance of the evidence that Lektorova negligently caused the accident, which the plaintiff alleged as part of its contractual indemnity claim against Davis. Although we express no opinion as to whether, under New York law, negligence was an element of the plaintiff's case because that issue is not properly before us, we note that the issue was put to the jury as an element without objection. The record is entirely devoid of any evidence that Lektorova was negligent. Instead, the plaintiff relied on Davis' testimony that Lektorova was driving the vehicle at the time it was involved in an accident, and the fact that there was a judgment for Green and Eakley in the New York action. Again, the plaintiff put on only the bare minimum of evidence, focusing its case almost entirely on Davis' execution of the lease agreement and practically ignoring the remaining elements of its case.

otherwise would be to depart from this sound policy which allows a decision based on more evidence to preclude review of a decision made on less evidence." (Citation omitted; internal quotation marks omitted.) *Gurliacci* v. *Mayer*, 218 Conn. 531, 541 n.7, 590 A.2d 914 (1991).

In its reply brief, the plaintiff proposes that exceptional circumstances exist that warrant our review of the claim, namely, that "(1) the decision [denying summary judgment], although articulated and lengthy, found a question of fact sufficient to deny summary judgment both on the motion and on the defendants' cross motion for opposing relief, and (2) the greater weight of law, in New York and Connecticut, recognizes that indemnity clauses contained within automobile leases . . . are conscionable and enforceable."

We are not persuaded that either of the circumstances that the plaintiff proposes are exceptional circumstances that merit review of a denial of a motion for summary judgment. Cases in which appellate courts have reviewed such a denial typically have involved a judgment without a full trial on the merits. See, e.g., *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 295 n.12, 596 A.2d 414 (1991); *Zanoni* v. *Lynch*, 79 Conn. App. 325, 334, 830 A.2d 314, cert. denied, 266 Conn. 928, 837 A.2d 803 (2003). In this case, there was a full trial on the merits, and the plaintiff has failed to provide this court with another reason that review of the denial of a motion for summary judgment is appropriate.

The judgment is affirmed.

In this opinion the other judges concurred.