******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## YOLANDA MCCREA ET AL. *v.* CUMBERLAND FARMS, INC., ET AL.
### (AC 42985)

Elgo, Cradle and Alexander, Js.

*Syllabus*

The plaintiffs, M and P, sought to recover damages for the defendants' alleged negligence as a result of injuries they sustained when their vehicle was struck from behind by the defendants' vehicle. The defendants filed a special defense alleging that P was contributorily negligent. Interrogatories were not submitted to the jury, which returned a general verdict for the defendants, and the trial court rendered judgment in their favor. On appeal to this court, the plaintiffs claimed, inter alia, that the trial court improperly prevented them from testifying, for the purpose of rehabilitating their credibility after it had been challenged by the defendants, that the reason their attorney referred them to certain medical providers was because they lacked adequate medical insurance. *Held*:

1. The trial court did not abuse its discretion when it allowed the defendants' counsel to question the plaintiffs about their selection of medical providers from a list curated by their attorneys and about a lawsuit M previously had filed that pertained to injuries she sustained in a prior motor vehicle accident: the examination of the plaintiffs by the defendants' counsel as to those issues was relevant to the defendants' claims that the testimony of the plaintiffs' medical providers was biased and that M's assertion about her injuries being causally related to the motor vehicle collision at issue lacked credibility; moreover, that evidence was properly admitted to challenge the plaintiffs' credibility as to whether they were actually harmed or merely seeking treatment to establish and to augment their damages claim, as credibility was a particularly important issue at trial given the parties' differing versions of the events.

2. The trial court improperly precluded the plaintiffs from presenting evidence that they sought treatment from medical providers referred to them by their attorneys due to their lack of adequate medical insurance; the plaintiffs were entitled to present that evidence to rebut the defendants' claim that their treatment may have been motivated not by pain but for purposes of litigation and establishing damages, nothing in the record revealed the authority on which the trial court relied in precluding the plaintiffs' evidence as to why certain medical providers were chosen, the defendants' assertion that the collateral source rule (§ 52-225a) precluded evidence of the absence of insurance was untenable, as that rule, which is premised on third-party payments toward damages sought by a plaintiff, was simply not implicated in this case, and, because the defendants repeatedly emphasized the role of the plaintiffs' attorneys in selecting medical providers, the court's preclusion of evidence the plaintiffs sought to present to rehabilitate their credibility likely affected the jury's verdict and thus constituted harmful error.

3. The defendants' contention that the general verdict rule precluded review of the plaintiffs' claims was unavailing; the defendants' challenge to the plaintiffs' credibility permeated all aspects of the trial, and, this court having determined that the trial court improperly precluded the plaintiffs from offering evidence to rehabilitate their credibility, the prejudicial effect of the trial court's ruling on their credibility could not be limited to the complaint or to the defendants' special defense of contributory negligence and, thus, necessarily tainted the entire case.

Argued October 19, 2020—officially released May 25, 2021

*Procedural History*

Action to recover damages for personal injuries sustained by the plaintiffs as a result of the defendants' alleged negligence, brought to the Superior Court in the judicial district of Fairfield, where the court, *Welch,*

*J*., denied the plaintiffs' motion to preclude certain evidence; thereafter, the matter was tried to the jury; verdict for the defendants; subsequently, the court, *Welch, J*., denied the plaintiffs' motion to set aside the verdict and rendered judgment in accordance with the verdict, from which the plaintiffs appealed to this court. *Reversed*; *new trial*.

*Michael E. Skiber*, for the appellants (plaintiffs).

*Tara F. Racicot*, with whom was *Matthew G. Conway*, for the appellees (defendants).

*Opinion*

ELGO, J. In this negligence action regarding injuries sustained by the plaintiffs, Yolanda McCrea and Derrick Pettway, in a motor vehicle accident, the jury returned a general verdict in favor of the defendants, Cumberland Farms, Inc. (Cumberland Farms), and its employee, Trevor Johnie. The trial court thereafter denied the plaintiffs' motion to set aside that verdict and rendered judgment accordingly. On appeal, the plaintiffs contend that the court improperly (1) permitted the defendants' counsel to pursue certain lines of questioning that allegedly were irrelevant and prejudicial, and (2) prevented the plaintiffs from testifying that the reason they were referred to certain medical providers by their attorney was because of a lack of adequate medical insurance. The defendants respond by arguing that the general verdict rule precludes our consideration of the plaintiffs' evidentiary claims. We agree with the plaintiffs' second claim and, accordingly, reverse the judgment of the trial court.[1]

The following facts and procedural history are relevant to this appeal. On November 23, 2015, while Pettway was driving on Interstate 95 in Milford, Pettway's vehicle was struck from behind by a vehicle driven by Johnie that was owned by Cumberland Farms. On August 17, 2017, the plaintiffs served the defendants with a summons and a four count complaint. Counts one and three alleged that the plaintiffs were injured as a result of Johnie's negligence,[2] and counts two and four alleged that Cumberland Farms was vicariously liable for their injuries. In their answer to the complaint, the defendants admitted that Johnie was acting within the scope of his employment but denied that the plaintiffs had been injured as a result of any negligence. As to counts three and four of the complaint, the defendants alleged, as a special defense, contributory negligence on the part of Pettway.[3] See General Statutes § 52-572h. On November 13, 2017, the defendants filed an apportionment complaint against Pettway, in which they claimed that any damages awarded to McCrea must be proportionately reduced by the percentage of Pettway's negligence pursuant to § 52-572h (c) and General Statutes § 52-102b.[4]

A trial was held before a jury from March 6 to 8, 2019. When it concluded, the court instructed the jury on the applicable law, including negligence, proximate cause, and damages. Neither party objected to those instructions. Interrogatories were not submitted to the jury, which returned a general verdict in favor of the defendants.

The plaintiffs thereafter moved to set aside the jury's verdict. The defendants filed an opposition to that motion, claiming, inter alia, that the general verdict rule precluded disruption of the jury's verdict. After hearing

argument from the parties, the court denied the plaintiffs' motion to set aside the verdict and rendered judgment in accordance with the jury's verdict. This appeal followed.

I

The plaintiffs first claim that the court improperly permitted the defendants' counsel to pursue certain lines of questioning at trial.[5] More specifically, they argue that the court abused its discretion in allowing the defendants to question (1) McCrea about the fact that she had brought a lawsuit related to a prior motor vehicle accident, (2) both plaintiffs on the fact that they had hired a previous attorney and the timing in which they contacted that attorney, and (3) both plaintiffs as to the fact that their medical providers were referred to them by their attorney. In response, the defendants contend that each line of questioning was relevant to the plaintiffs' credibility. We agree with the defendants.

The following additional facts and procedural history are relevant to those claims. On February 13, 2019, the plaintiffs filed a motion in limine to preclude evidence of (1) when they hired their previous attorney, (2) McCrea's lawsuit that was related to a past motor vehicle accident, and (3) a referral made by the plaintiffs' prior attorney to a physical therapist. On March 1, 2019, the defendants filed an objection to the motion in limine, arguing that those facts were admissible "for purposes of aiding the jury in appraising the parties' credibility." The court thereafter denied the motion in limine.[6]

During the defendants' cross-examination of McCrea at trial, the following colloquy occurred:

"[The Defendants' Counsel]: At some point . . . after going to the emergency room the next day, you went to see a physical therapist, Core Physical Therapy?

"[McCrea]: It wasn't right after the emergency room. . . .

"[The Defendants' Counsel]: . . . You saw Dr. [Eric J.] Katz . . . because he was on a list given to you by your attorney?

"[McCrea]: That's correct.

"[The Defendants' Counsel]: And you were represented by a different attorney at the time?

"[McCrea]: That's correct.

"[The Defendants' Counsel]: So, it's fair to say that, as of December 17, 2015, you . . . had retained counsel in regard to this accident?

"[The Plaintiffs' Counsel]: Objection, Your Honor; relevance.

"The Court: Overruled. . . .

"[McCrea]: So—

"[The Defendants' Counsel]: Well, the answer is either a yes or a no, ma'am. Is it true that, as of December 17, 2015, you had retained an attorney in regard to this accident, which we're here in court for today?

"[McCrea]: It's true that I retained an attorney after—

"[The Defendants' Counsel]: Thank you. You've answered the question."

After that exchange, the court took a lunch recess. The issue of attorney referrals came up again during the defendants' cross-examination of Pettway:

"[The Defendants' Counsel]: Let's turn to your medical treatment. You testified that you went to St. Vincent's [Medical Center in Bridgeport] day one, correct?

"[Pettway]: Yes. . . .

"[The Defendants' Counsel]: . . . You went to a doctor from an attorney who provided you a list? . . .

"[Pettway]: . . . I was calling doctors, and they told me I'll have to get a lawyer. So, the attorney gave me a list.

"[The Defendants' Counsel]: So, is it fair to say that the day after you went to the emergency room, you went to a lawyer to find a doctor.

"[Pettway]: No.

"[The Plaintiffs' Counsel]: Objection, Your Honor, relevance.

"The Court: Sustained."

The defendants' counsel then asked Pettway about McCrea's medical treatment:

"[The Defendants' Counsel]: . . . [L]et's talk about the medical documents that you've seen. You testified that you're aware of who . . . McCrea has seen as well, correct?

"[Pettway]: Only some—some of the ones we've seen together. Yeah.

"[The Defendants' Counsel]: Well, [your counsel], on direct examination asked you if she went to Dr. Katz as well, and she did.

"[Pettway]: Yes.

"[The Defendants' Counsel]: In fact, you went together to see Dr. Katz?

"[Pettway]: Yes.

"[The Defendants' Counsel]: And she has testified on direct examination that she went to Core Physical Therapy and you went to Core Physical Therapy.

"[Pettway]: Yes.

"[The Defendants' Counsel]: She's testified on direct examination that she went to [a] chiropractor. You went to . . . the [same] chiropractor . . . .

"[Pettway]: Yes.

"[The Defendants' Counsel]: She's testified in examination that she had a lawyer and then she had a different lawyer. . . . And you had that same lawyer and then you had [a different lawyer]?

"[Pettway]: Yes."

Finally, during McCrea's direct examination, she testified that she suffered neck and back pain from a previous motor vehicle accident in 2011. During recross-examination, the following colloquy took place between the defendants' counsel and McCrea:

"[The Defendants' Counsel]: So, [after your prior] motor vehicle accident in 2011, you filed a lawsuit for that accident. Correct?

"[McCrea]: Yes, I did.

"[The Defendants' Counsel]: Thank you.

"[McCrea]: And my car was totaled out, yes."[7]

On appeal, the plaintiffs challenge the propriety of that questioning. We begin by setting forth the relevant standard of review. "Upon review of a trial court's decision, we will set aside an evidentiary ruling only when there has been a clear abuse of discretion. . . . The trial court has wide discretion in determining the relevancy of evidence and the scope of cross-examination and [e]very reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Edwards*, 202 Conn. App. 384, 407, 245 A.3d 866, cert. denied, 336 Conn. 920, 246 A.3d 3 (2021).

Section 4-1 of the Connecticut Code of Evidence defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence." "To determine whether a fact is 'material' or 'consequential,' it is necessary to examine the issues in the case, as defined by the underlying substantive law, the pleadings, applicable pretrial orders, and events that develop during the trial. Thus, the relevance of an offer of evidence must be assessed against the elements of the cause of action, crime, or defenses at issue in the trial. The connection to an element need not be direct, so long as it exists." (Internal quotation marks omitted.) *State* v. *Fasano*, 88 Conn. App. 17, 36–37, 868 A.2d 79, cert. denied, 274 Conn. 904, 876 A.2d 15 (2005), cert. denied, 546 U.S. 1101, 126 S. Ct. 1037, 163 L. Ed. 2d 873 (2006). Section 4-3 of the Connecticut Code of Evidence provides: "Relevant evidence may be

excluded if its probative value is outweighed by the danger of unfair prejudice or surprise, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." "In order to exclude evidence on the ground of prejudice, there must be undue prejudice great enough to threaten an injustice. . . . The burden of showing that the evidence may unduly arouse the jurors' emotions of hostility or sympathy rests with the party claiming prejudice." (Citations omitted; internal quotation marks omitted.) *Hayes* v. *Manchester Memorial Hospital*, 38 Conn. App. 471, 475, 661 A.2d 123, cert. denied, 235 Conn. 922, 666 A.2d 1185, and cert. denied, 235 Conn. 922, 666 A.2d 1185 (1995).

The plaintiffs argue that each of these issues raised by the defendants "created a side issue that unduly distracted the jury" from whether Johnie was negligent and whether that negligence was the proximate cause of the plaintiffs' injuries. In response, the defendants submit that "credibility is always relevant," and "the fact that the plaintiffs first consulted with an attorney and then treated with doctors the attorney referred them to tends to show that the plaintiffs' treatment may have been motivated, not by any purported pain, but instead for purposes of the litigation and establishing damages." (Emphasis omitted.) We conclude that the defendants' examination of the plaintiffs with respect to this evidence was relevant to the issue of credibility and was not unduly prejudicial.

"Once a witness has testified to certain facts . . . his credibility is a fact that is of consequence to [or material to] the determination of the action, and evidence relating to his credibility is therefore relevant . . . ." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Fasano*, supra, 88 Conn. App. 37. It is well established that "[c]ross-examination is an indispensable means of eliciting facts that may raise questions about the credibility of witnesses and, as a substantial legal right, it may not be abrogated or abridged at the discretion of the court to the prejudice of the party conducting that cross-examination." (Internal quotation marks omitted.) *Tiplady* v. *Maryles*, 158 Conn. App. 680, 696–97, 120 A.3d 528, cert. denied, 319 Conn. 946, 125 A.3d 527 (2015).

Here, evidence that McCrea filed a lawsuit after she sustained injuries in the 2011 motor vehicle accident was relevant to the defendants' claim that McCrea's assertion that her injuries were causally related to her accident in this action lacked credibility. The fact that the plaintiffs selected medical providers from a list curated by their attorneys was also relevant to the defendants' claim that the testimony of the plaintiffs' medical providers was biased in favor of the plaintiffs. That evidence was also properly admitted to challenge the plaintiffs' credibility with respect to whether the

plaintiffs were actually harmed or merely were seeking treatment from these providers to establish and to augment their damages claim for litigation purposes. Moreover, evidence that the plaintiffs' former attorney had referred the plaintiffs to Dr. Katz was similarly relevant to motive, bias, and credibility. Finally, as the defendants asserted in their objection to the plaintiffs' motion in limine, "the credibility of the plaintiffs is a particularly important issue at trial given the differing versions of events proffered by the plaintiffs as opposed to what the [defendants claim] occurred." For those reasons, we conclude that the court did not abuse its discretion when it allowed the defendants' counsel to explore these issues of credibility at trial.

## II

The plaintiffs also claim the court improperly precluded them from testifying that their lack of adequate medical insurance was the reason for seeking treatment from medical providers referred by their attorney. We agree.

The following additional facts are relevant to this claim. Following the denial of the plaintiffs' motion in limine, the trial commenced with opening statements by counsel. In his opening statement, the defendants' counsel suggested that the plaintiffs were exaggerating their injuries, stating that "[t]his case is entirely about credibility," that "the [plaintiffs'] attorneys sent [the plaintiffs] to certain doctors for the treatment," and that "it all adds up . . . ." After noting during his opening statement that the plaintiffs' counsel had "[allud]ed to the fact that the attorneys have sent them to the doctors to treat," the defendants' counsel stated that the plaintiffs' counsel had "sent" Pettway to Dr. Michael J. Giordano and had "sent [Pettway] to Dr. [Abraham] Mintz."

After opening statements concluded but before the presentation of evidence began, the plaintiffs requested permission from the court to offer testimony that the attorney referrals were necessary because the medical provider did not accept the plaintiffs' medical insurance. The court rejected the plaintiffs' request:

"The Court: We're not going there.

"[The Plaintiffs' Counsel]: But, Your Honor, he's—he's already—he's able to throw the—

"The Court: No, he—he said, how did you get referrals. We're talking about referrals.

"[The Plaintiffs' Counsel]: Right.

"The Court: Now you're bringing insurance into the case.

"[The Plaintiffs' Counsel]: But the reason we made referrals, Your Honor, and I think I should be able to explain that, is because [the medical providers do not]

accept [the plaintiffs' insurance]—

"The Court: Then you're—you're—it's testimony. That's where I thought we were moving.

"[The Plaintiffs' Counsel]: Right. But he's already thrown the—the gauntlet down by saying the [plaintiffs'] attorneys send clients to their own doctors . . . and I think I have the—I should have the ability to [explain why the plaintiffs were] sent to these particular doctors; well, because the other doctors didn't accept [their] insurance. . . .

"[The Defendants' Counsel]: No—no way. . . . [T]here's not a case in the state that we allow insurance issues to come in.

"The Court: Right. And insurance is not coming in. . . . [Y]ou have a list, if I gather correctly, that you refer doctors. That's how they got there. The money issue is not part of this."

Nothing in the transcripts or record before us reveals the authority on which the court relied in precluding evidence of the plaintiffs' lack of adequate medical insurance as the reason for seeking treatment from medical providers referred by their attorney. On appeal, the defendants cite to *Capozziello* v. *Robinson*, 102 Conn. App. 93, 95, 924 A.2d 876 (2007), for the precept that "it is a well established rule that the existence of collateral sources should not be revealed to the jury." (Emphasis omitted.) With no further analysis, the defendants suggest that the collateral source rule justifies the court's ruling.[8] In response, the plaintiffs argue that evidence of insurance, or more precisely, their lack thereof, was necessary to properly explain why certain medical providers were chosen. They contend that such evidence was relevant and necessary to rehabilitate their credibility in light of the defendants' portrayal of them as "litigious malingerers who only chose to treat for their injuries at the suggestion of their attorneys."

In 1986, our legislature abolished the common-law collateral source rule in personal injury cases to prevent a plaintiff from receiving a double recovery for injuries. *Mack* v. *LaValley*, 55 Conn. App. 150, 167, 738 A.2d 718, cert. denied, 251 Conn. 928, 742 A.2d 363 (1999). General Statutes § 52-225a (a) provides in relevant part that, in a civil action sounding in tort in which the plaintiff seeks to recover damages resulting from personal injuries that occurred on or after October 1, 1987, and in which the jury determines liability and awards damages to compensate the plaintiff, "the court shall reduce the amount of such award which represents economic damages . . . by an amount equal to the total of amounts" paid by collateral sources. As this court has noted, "[t]he language and legislative history of § 52-225a clearly indicate that [it] was intended to prevent plaintiffs from obtaining double recoveries, i.e., collecting economic damages from a defendant and also receiving collateral

source payments." (Internal quotation marks omitted.) *Corcoran* v. *Taylor*, 65 Conn. App. 340, 344–45, 782 A.2d 728, cert. denied, 258 Conn. 925, 783 A.2d 1027 (2001). In enacting § 52-225a, the legislature sought to strike an "equitable balance . . . between preventing defendants from benefiting from reduced judgments due to collateral source payments, on the one hand, and barring plaintiffs from recovering twice for the same loss, on the other." (Internal quotation marks omitted.) *Jones* v. *Kramer*, 267 Conn. 336, 346, 838 A.2d 170 (2004). The legislature plainly was concerned that evidence of third-party payments could accrue to the benefit of the defendant because a jury might be tempted to factor in and deduct paid medical bills from a plaintiff's claim for damages. At the same time, in the absence of a collateral source hearing pursuant to § 52-225a, a plaintiff inadvertently could be awarded a double recovery. With the mechanism embodied in § 52-225a in place, "[e]vidence of an injured person's income or recovery from loss-reducing sources is ordinarily barred by the collateral source rule." *Hammer* v. *Mount Sinai Hospital*, 25 Conn. App. 702, 721, 596 A.2d 1318, cert. denied, 220 Conn. 933, 599 A.2d 384 (1991).

Given the principles underlying the collateral source rule, which are premised on third-party *payments* toward the claim of damages sought by a plaintiff, the defendants' suggestion that it operates to preclude evidence of the *absence* of insurance is untenable. For that reason, the collateral source rule is simply not implicated in the present case. Even if third-party payments were at issue, however, the appellate courts of this state have long held that, when evidence of collateral source payments is relevant to credibility, the admission of such evidence is not improper. See *Acampora* v. *Ledewitz*, 159 Conn. 377, 384, 269 A.2d 288 (1970) (although evidence that third party paid plaintiff's bills ordinarily is irrelevant and inadmissible under collateral source rule, that evidence is admissible if relevant to credibility); cf. *Hammer* v. *Mount Sinai Hospital*, supra, 25 Conn. App. 722 (court did not abuse its discretion in excluding evidence of plaintiff's income from disability insurance payments when such evidence would have been cumulative because it related to his credibility about his finances).

Our Supreme Court's analysis in *Acampora* v. *Ledewitz*, supra, 159 Conn. 377, is instructive. In that case, the plaintiff sought damages for injuries she suffered from a fall on the defendant's property. At trial, the plaintiff's physician testified that he treated the plaintiff for those injuries between the years 1965 through 1967. The plaintiff nevertheless had submitted into evidence a medical bill indicating that her last visit with the physician was on December 8, 1964. In an apparent attempt to explain the discrepancy between the bill and his testimony, the physician testified that he did not charge the plaintiff for her visits in the ensuing years

because she was worried about her ability to pay and that he kept no record of her visits. On cross-examination, the defendant was precluded from attempting to show that the plaintiff's bills were paid under workers' compensation, which, he argued, was relevant to challenging the physician's credibility with respect to his testimony that he had not kept a record or billed the plaintiff because of her inability to pay. Because the issue of payment was deemed vital with respect to the physician's credibility, our Supreme Court held that, although the collateral source rule ordinarily would preclude evidence of payments by third parties, it was reversible error to preclude the defendants from pursuing the matter on cross-examination. Id., 383–84.

In the present case, the defendants' case was premised on the claim that the plaintiffs were not credible, in part because their medical providers were referred to them by their attorneys. As discussed in part I of this opinion, such testimony properly was admitted into evidence, as the defendants claim, "to show that the plaintiffs' treatment may have been motivated, not by any purported pain, but instead for purposes of the litigation and establishing damages." It is for precisely this reason that the plaintiffs sought to rebut this characterization of their motives with evidence that strikes at the heart of their attorneys' role in the procurement of their treatment. Thus, the plaintiffs were entitled to present evidence that they sought treatment from medical providers referred to them by their attorneys due to their lack of adequate medical insurance. We, therefore, conclude that the court improperly precluded the plaintiffs from introducing such evidence.

Our inquiry does not end with the conclusion that the court's ruling was erroneous. We also must consider whether it constituted harmful error. "Even when a trial court's evidentiary ruling is deemed to be improper, we must determine whether that ruling was so harmful as to require a new trial. . . . In other words, an evidentiary ruling will result in a new trial only if the ruling was both wrong and harmful. . . . It is the plaintiff's burden to show harmful error." (Internal quotation marks omitted.) *Suntech of Connecticut, Inc.* v. *Lawrence Brunoli, Inc.*, 173 Conn. App. 321, 347, 164 A.3d 36 (2017), appeal dismissed, 330 Conn. 342, 193 A.3d 1208 (2018).

The defendants argues that, even if the court erred in precluding this testimony from the plaintiffs, the error was harmless because the plaintiffs were able to explain that they chose certain providers for convenience,[9] that they provided their doctors with letters of protection,[10] and that they received treatment from other doctors who were not referred to by the plaintiffs' attorneys.[11] We conclude that such ancillary evidence does not mitigate the taint on the plaintiffs' motives or their overall credibility.

In this regard, it bears emphasis that, in his opening statement to the jury, the defendants' counsel alleged that the case was "about [the plaintiffs] taking advantage of the system" and that the plaintiffs' attorneys "sent them to certain doctors for the treatment . . . ." In light of that narrative to the jury, the defendants' counsel proceeded to question both plaintiffs about the fact that their attorneys had referred them to some of their medical providers. Finally, during closing arguments, while discussing Pettway's claimed injuries, the defendants' counsel argued that the fact that the plaintiffs' attorneys were "sending people to doctors, by [the plaintiffs' counsel's] own words, it's not a good look . . . ." Because the defendants' theory at trial repeatedly emphasized the role of the plaintiffs' attorneys in selecting medical providers, we are not persuaded that other reasons given by the plaintiffs mitigate the prejudice to them. Unlike convenience and proximity, the plaintiffs' lack of insurance was offered not simply to explain their choice of providers but, more precisely, to explain the role their attorneys played in securing them. Such testimony bore directly on a central challenge to their credibility by the defendants at trial. By precluding that testimony, the court permitted the defendants to attack the plaintiffs' credibility while denying the plaintiffs the opportunity to rehabilitate their credibility. For that reason, we conclude that the court's ruling likely affected the jury's verdict and, thus, constitutes harmful error.

### III

As a final matter, we address the defendants' contention that the general verdict rule precludes review of the plaintiffs' claims.[12] "Under the general verdict rule, if a jury renders a general verdict for one party, and [the party raising a claim of error on appeal did not request] interrogatories, an appellate court will presume that the jury found every issue in favor of the prevailing party. . . . Thus, in a case in which the general verdict rule operates, if any ground for the verdict is proper, the verdict must stand; only if every ground is improper does the verdict fall. . . . The rule rests on the policy of the conservation of judicial resources, at both the appellate and trial levels." (Internal quotation marks omitted.) *Garcia* v. *Cohen*, 335 Conn. 3, 10–11, 225 A.3d 653 (2020).

"On the appellate level, the rule relieves an appellate court from the necessity of adjudicating claims of error that may not arise from the actual source of the jury verdict that is under appellate review. In a typical general verdict rule case, the record is silent regarding whether the jury verdict resulted from the issue that the appellant seeks to have adjudicated. Declining in such a case to afford appellate scrutiny of the appellant's claims is consistent with the general principle of appellate jurisprudence that it is the appellant's respon-

sibility to provide a record upon which reversible error may be predicated. . . . [T]he general verdict rule applies to the following five situations: (1) denial of separate counts of a complaint; (2) denial of separate defenses pleaded as such; (3) denial of separate legal theories of recovery or defense pleaded in one count or defense, as the case may be; (4) denial of a complaint and pleading of a special defense; and (5) denial of a specific defense, raised under a general denial, that had been asserted as the case was tried but that should have been specially pleaded." (Citation omitted; internal quotation marks omitted.) Id., 11–12.

In the present case, we analyze the applicability of the general verdict rule under the fourth scenario because the pleadings here included a denial of the complaint and the assertion of a special defense.[13]

As this court has noted, the general verdict rule "operates . . . to insulate a verdict that may have been reached under a cloud of error, but which also could have been reached by an untainted route." (Internal quotation marks omitted.) *Klein* v. *Quinnipiac University*, 193 Conn. App. 469, 487, 219 A.3d 911 (2019), appeal dismissed, Conn. , A.3d (2020).

In the present case, the defendants argue that the general verdict rule applies because they filed special defenses of contributory negligence as to Pettway and because the plaintiffs failed to request interrogatories. As this court has noted, a defendant's "denial of negligence and . . . allegations of contributory negligence constitute two discrete defenses, either of which could [support a] jury's general verdict. . . . The verdict [could be] predicated on the [defendant's] freedom from negligence or on the plaintiff's comparatively greater negligence. . . . In light of [a] plaintiff's failure to request interrogatories to ascertain the basis of the jury's verdict, [the verdict] must [be upheld] . . . under the general verdict rule, if either defense is legally supportable." (Internal quotation marks omitted.) Id.

A review of cases in which this court has addressed the applicability of the general verdict rule to evidentiary claims is instructive. In *Bergmann* v. *Newton Buying Corp.*, 17 Conn. App. 268, 269, 551 A.2d 1277 (1989), the plaintiff sued the defendant in connection with injuries she sustained when she slipped and fell in the defendant's department store. In responding to the complaint, the defendant filed a special defense alleging contributory negligence on the part of the plaintiff. Id. At trial, no interrogatories were submitted to the jury, which returned a general verdict for the defendant. Id. On appeal, the plaintiff argued that the court improperly had granted a motion in limine that precluded her from offering evidence of the defendant's refusal to permit inspection of its premises until after the surface of the floor was changed. The purpose of the excluded evidence was to allow the jury to draw an inference

adverse to the defendant, namely, that the defendant's initial refusal to let the plaintiff inspect the floor was an admission of liability by conduct. Id., 269–70. In considering the applicability of the general verdict rule, this court observed that the court's evidentiary ruling affected only the plaintiff's claims regarding the defendant's negligence and not the defendant's special defense of contributory negligence. Id., 270. As such, we reasoned that, if the plaintiff's claim of error as to the defendant's special defense was without merit, the general verdict rule would preclude review of the plaintiff's other three claims of error relative to the defendant's negligence. Id., 270–71. The court then turned to the merits of the plaintiff's additional claim of instructional error as to the defendant's special defense. Having concluded that the trial court did not err in its jury instruction on contributory negligence, we held that the general verdict stood, irrespective of any other claim of error, including the plaintiff's assertion of evidentiary error. Id., 271–73.

In *Spears* v. *Elder*, 124 Conn. App. 280, 284, 5 A.3d 500, cert. denied, 299 Conn. 913, 10 A.3d 528 (2010), the plaintiff brought an action against the defendant alleging, inter alia, defamation by slander and fraud. At the conclusion of trial, neither party submitted interrogatories to the jury, which returned a general verdict in favor of the plaintiff. Id. On appeal, the defendant challenged the propriety of several evidentiary rulings. Id., 285. This court concluded that, to the extent that certain evidentiary claims pertained solely to the slander count, the general verdict rule precluded review of the fraud claim. However, to the extent that an evidentiary error implicated the credibility of the plaintiff, the general verdict rule did not preclude review because the plaintiff's credibility applied to both causes of action. Id., 292.

In part I of this opinion, we concluded that the court properly allowed the defendants to elicit evidence challenging the plaintiffs' motives in filing the lawsuit and their credibility in general. Although the defendants have argued that the evidence was proper because it tended "to show that the plaintiffs' treatment may have been motivated, not by any purported pain," but instead for purposes of litigation and establishing damages, their challenge to the plaintiffs' credibility permeated all aspects of the trial. As the defendants' objection to the plaintiffs' motion in limine made clear, "the credibility of the plaintiffs [was] a particularly important issue at trial given the differing versions of events proffered by the plaintiffs as opposed to what the [defendants claim] occurred." Because we have concluded that the court improperly precluded the plaintiffs from offering evidence to rehabilitate their credibility, and given that the prejudicial effect on their credibility cannot be limited to the complaint or the defendants' special defense of comparative negligence, the preclusion of that evi-

dence necessarily taints the entire case. Cf. *Spears* v. *Elder*, supra, 124 Conn. App. 292. Because no untainted route to the jury's verdict remains, we conclude that the general verdict rule does not apply.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

[1] The plaintiffs also claim that the court improperly denied their motion to set aside the verdict because it was against the weight of the evidence. In light of our conclusion that the court committed reversible error by precluding evidence of insurance, we do not address that claim.

[2] The plaintiffs alleged, inter alia, that Johnie was negligent in having failed (1) to operate his motor vehicle at a reasonable rate of speed, (2) to keep his vehicle under proper control, (3) to keep a proper lookout for other motor vehicles on the highway, (4) to apply the brakes in time to avoid a collision and (5) to turn his vehicle in such a manner as to avoid a collision.

[3] The defendants alleged, inter alia, that Pettway was negligent in having failed (1) to keep a proper lookout for other motor vehicles on the highway, (2) to keep a proper and reasonable control of his vehicle, (3) to apply his brakes or to steer his vehicle in a manner so as to avoid the collision and (4) to pass the vehicle driven by Johnie safely and in accordance with General Statutes § 14-233.

[4] General Statutes § 52-572h (c), which governs the apportionment of liability among multiple tortfeasors, provides in relevant part: "[I]f the damages are determined to be proximately caused by the negligence of more than one party, *each party against whom recovery is allowed* shall be liable to the claimant only for such party's proportionate share of the recoverable economic damages and the recoverable noneconomic damages . . . ." (Emphasis added.)

General Statutes § 52-102b provides in relevant part: "(a) A defendant in any civil action to which section 52-572h applies may serve a writ, summons and complaint upon a person *not a party to the action* who is or may be liable . . . for a proportional share of the plaintiff's damages in which case the demand for relief shall seek an apportionment of liability. . . ." (Emphasis added.)

Although the issue is not presently before us, we note that Superior Court authority is divided on the issue of whether a defendant may bring an apportionment claim against a plaintiff. "The majority of cases considering this issue . . . have refused to allow a defendant to bring an apportionment claim against a plaintiff." (Internal quotation marks omitted.) *Ulic* v. *Caciopoli*, Superior Court, judicial district of New Haven, Docket No. CV-03-0473774-S (February 4, 2004) (36 Conn. L. Rptr. 474, 475). "Courts adopting the majority view have generally done so on the basis of the plain language and legislative history of § 52-102b as well as the fact that apportionment is already available to parties in negligence actions." (Internal quotation marks omitted.) *Harding* v. *Mrini*, Superior Court, judicial district of Ansonia-Milford, Docket No. CV-18-6027127-S (February 3, 2020) (70 Conn. L. Rptr. 31, 34).

[5] Although we reverse the judgment and remand the case for a new trial on other grounds, we address these evidentiary claims because they are likely to arise again in the new trial; see, e.g., *State* v. *Norman P.*, 169 Conn. App. 616, 618 n.2, 151 A.3d 877 (2016), aff'd, 329 Conn. 440, 186 A.3d 1143 (2018); and because a discussion of these claims underscores the centrality of the plaintiffs' credibility in this case.

[6] Although the plaintiffs have not provided this court with a transcript of the trial court's ruling on their motion in limine, it is undisputed that the court denied that motion prior to trial.

[7] The defendants do not contend that the evidentiary claims discussed in part I of this opinion were unpreserved. See Practice Book § 60-5; cf. *Cima* v. *Sciaretta*, 140 Conn. App. 167, 173 n.5, 58 A.3d 345 (evidentiary claim preserved for appellate review by filing of pretrial motion in limine), cert. denied, 308 Conn. 912, 61 A.3d 532 (2013).

[8] The collateral source rule, codified at General Statutes § 52-225a provides in relevant part: "(a) In any civil action, whether in tort or in contract, wherein the claimant seeks to recover damages resulting from (1) personal injury or wrongful death . . . and wherein liability is admitted or is determined by the trier of fact and damages are awarded to compensate the

claimant, the court shall reduce the amount of such award which represents economic damages, as defined in subdivision (1) of subsection (a) of section 52-572h, by an amount equal to the total of amounts determined to have been paid under subsection (b) of this section less the total of amounts determined to have been paid, contributed or forfeited under subsection (c) of this section, except that there shall be no reduction for (A) a collateral source for which a right of subrogation exists, and (B) the amount of collateral sources equal to the reduction in the claimant's economic damages attributable to the claimant's percentage of negligence pursuant to section 52-572h.

"(b) Upon a finding of liability and an awarding of damages by the trier of fact and before the court enters judgment, the court shall receive evidence from the claimant and other appropriate persons concerning the total amount of collateral sources which have been paid for the benefit of the claimant as of the date the court enters judgment. . . ."

[9] More specifically, the defendants note that McCrea was permitted to explain that she chose Dr. Katz (a doctor to whom she was referred by her former attorney) because Dr. Katz' practice stayed open later than other practices. During Pettway's direct examination, he testified that he selected Dr. Katz because the practice was close to one of his properties and that he went at the same time as McCrea because the appointment times "work[ed] for both of" them. McCrea and Pettway also testified that Dr. Katz' practice was located in the same building as Core Physical Therapy, which both plaintiffs attended for treatment.

[10] On this issue the defendants specifically cite the fact that (1) during opening statements, the plaintiffs' counsel referred to "letters of protection," and (2) during McCrea's direct examination, she testified that there was a gap in her treatment because she was no longer represented by her first attorney and, as a result, Dr. Katz could no longer see the plaintiffs on "a letter of protection status." We note, however, that opening statements are not evidence and that "letter of protection" is a term of art. Thus, mere reference to a "letter of protection" without affording the plaintiffs the opportunity to explain its significance does not mitigate harm.

[11] The defendants note that Pettway testified that Dr. Katz referred him to Dr. Rahul S. Anand for lumbar epidermal injections. They further note that McCrea also testified that she was referred to the Orthopedic Specialty Group, P.C., in Fairfield by Dr. Joseph J. Firgeleski III for neck and back pain, was referred to a specialist at Gaylord Hospital by her oral surgeon, found another provider, Dr. Brijesh Chandwani, on her own after her pain worsened, did not recall who referred her to Dr. William C. DeAngelo,, and was referred to Dr. M. Joshua Hasbani, a neurologist, by Dr. DeAngelo.

[12] We note that the plaintiffs did not address the applicability of the general verdict rule in their appellate brief. Although the plaintiffs were provided an opportunity at oral argument before this court to explain why they believed the general verdict rule did not apply, they declined to provide any such argument.

[13] The defendants contend that the present case may be analyzed pursuant to the first and second scenarios. We disagree. Scenario one applies when a complaint asserts several counts against a defendant, and a *prevailing plaintiff* seeks application of the rule because at least one count is not implicated by a defendant's claim of error. Because the plaintiffs are taking the appeal and there is only one count alleged against each defendant, scenario one clearly does not apply. See generally *Curry* v. *Burns*, 225 Conn. 782, 792–93, 626 A.2d 719 (1993). The second scenario similarly has no application to the present case, as there is only one special defense asserted by each defendant as to Pettway.

We further note that the defendants have failed to address the operation of the general verdict rule relative to the apportionment complaint filed with respect to Pettway. See footnote 4 of this opinion and accompanying text.