******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ELISABETH M. CORBO *v.* CHRISTOPHER J. SAVLUK
(AC 43727)

Alvord, Cradle and Lavine, Js.

*Syllabus*

The plaintiff sought to recover damages for personal injuries that she alleg-
edly sustained during a motor vehicle accident as a result of the defen-
dant's negligence. Several days after the accident, the plaintiff visited
a walk-in clinic, where medical personnel conducted a physical examina-
tion of the plaintiff. The clinic's medical report noted that the plaintiff
reported experiencing tenderness near her sternum and rib cage.
Approximately one week later, the plaintiff had an initial appointment
with a chiropractor, at which she presented with various other areas
of pain. At trial, the defendant's counsel cross-examined the plaintiff
regarding alleged inconsistencies in the descriptions of her reported
symptoms at her visit to the walk-in clinic and at the chiropractor, and
sought to introduce evidence of the date that the plaintiff first contacted
an attorney. The court permitted the defendant's counsel to introduce
into evidence a letter that indicated that the plaintiff retained counsel
in the period between her visit to the walk-in clinic and her appointment
at the chiropractor to explain why her description of injuries to the
chiropractor lacked credibility. Following the jury's verdict in favor of
the defendant, the plaintiff filed a motion to set aside the verdict, claiming
that the admission of the letter, was improper. The trial court denied
the motion and rendered judgment in accordance with the verdict, from
which the plaintiff appealed to this court. *Held*:

1. The trial court did not abuse its discretion when it allowed the defendant's
counsel to question the plaintiff about the timing of her first consultation
with counsel after the motor vehicle accident for purposes of impeach-
ment: the examination of the plaintiff by the defendant's counsel as to
that issue was relevant to the defendant's claim that the plaintiff lacked
credibility due to her changing descriptions of her injuries between
visiting a walk-in clinic and commencing treatment with a chiropractor;
moreover, expert testimony was not required to determine that there
was a potential factual discrepancy for the jury to resolve concerning
the plaintiff's changing descriptions of her injuries.

2. The trial court did not abuse its discretion when it permitted the defen-
dant's counsel to introduce a letter that indicated that the plaintiff had
retained counsel to represent her in connection with the accident under
the residual exception to the hearsay rule: there was a reasonable neces-
sity for the admission of the letter into evidence because the plaintiff
could not recall whether she had met with counsel prior to her initial
visit with the chiropractor despite effort by the defendant's counsel to
refresh her recollection, and the letter was relevant to the plaintiff's
credibility due to her changing descriptions of her injuries; moreover,
the letter bears the requisite indicia of trustworthiness and reliability.

Argued September 14–officially released December 21, 2021

*Procedural History*

Action to recover damages for personal injuries alleg-
edly sustained as a result of the defendant's negligence,
brought to the Superior Court in the judicial district of
Hartford and tried to the jury before *Budzik, J.*; verdict
for the defendant; thereafter, the court, *Budzik, J.*,
denied the plaintiff's motion to set aside the verdict,
and rendered judgment in accordance with the verdict,
from which the plaintiff appealed to this court.
*Affirmed.*

*William B. Wynne*, for the appellant (plaintiff).

*Jack G. Steigelfest*, for the appellee (defendant).

*Opinion*

LAVINE, J. In this negligence action stemming from a motor vehicle collision, the plaintiff, Elisabeth M. Corbo, appeals from the judgment of the trial court rendered after a jury verdict for the defendant, Christopher J. Savluk. On appeal, she claims that the court improperly (1) permitted the defendant's attorney to question her regarding when she first contacted an attorney and (2) admitted into evidence a letter that indicated that the plaintiff had retained counsel to represent her in connection with the accident. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the evening of April 18, 2016, the defendant, while traveling in the southbound lane on Old County Road in Windsor Locks, rear-ended the vehicle in front of him, which was being operated by an individual who is not a party to this action, which resulted in that vehicle colliding with the plaintiff's vehicle as it traveled in the northbound lane on Old County Road. At the scene, a police officer asked the plaintiff if she needed medical attention, and she responded in the negative.[1] The following day, she went to the emergency room but left without seeing a doctor. On April 21, 2016, the plaintiff went to a Hartford Healthcare walk-in clinic. The medical report from the walk-in clinic states that the plaintiff had reported "some discomfort where the seatbelt was on her," that her "[a]ssociated symptoms include myalgias" and indicated that "[p]ertinent negatives include no neck pain." The walk-in clinic report also contained a musculoskeletal diagram under the heading "[p]hysical [e]xam," which noted tenderness near the plaintiff's sternum and right ribcage. A letter from the Adler Law Group, LLC (Adler Law), dated April 27, 2016, which was admitted as a full exhibit at trial with the name of the recipient redacted, states that the plaintiff had retained them to represent her in connection with the motor vehicle collision. On April 29, 2016, the plaintiff had an initial appointment with Gary Italia, a chiropractor. The report from that initial visit states that the plaintiff "presents to the office with neck pain, back pain, bilateral rib/flank pain and chest pain that began on 4/18/2016 from a motor vehicle accident."

The plaintiff brought the underlying action alleging negligence against the defendant in April, 2018. The defendant admitted in his answer that he had failed to keep a proper and reasonable lookout for other vehicles on the roadway, and trial proceeded on the issues of causation and damages only. The jury returned a verdict in favor of the defendant. This appeal followed.

## I

The plaintiff claims that the court erred when it permitted the defendant's attorney to question her regard-

ing when she first contacted an attorney after the accident. The plaintiff contends that "once the issues of fraud and deceit are presented to a jury, the trial becomes a Wild West Show. The trial is no longer about liability and damages but greedy plaintiffs, television lawyers, and insurance rates." We are not persuaded.

The following additional facts and procedural history are relevant to our disposition of this claim. The plaintiff testified on direct examination that there had been no change in her injuries or the pain she had experienced from the time of the collision until her initial visit with Italia, at which time she reported neck pain, back pain, bilateral rib flank pain, and chest pain. On cross-examination, when questioned about the walk-in clinic report that indicated she had no neck pain, the plaintiff explained, "That's what he wrote, that's not what I said." When further asked regarding the musculoskeletal diagram in the walk-in clinic report that noted tenderness in two frontal locations and not on her back, she responded, "I don't know what that means. I don't even know that he asked me anything." When questioned whether her complaint to Italia of constant pain since the date of the collision was inconsistent with the symptoms indicated on the report from her visit at the walk-in clinic, she responded, "I wasn't there long enough for anyone to ask me all these questions from the walk-in clinic, which is part of the reason why I didn't feel any of them were effective at all." The defendant's counsel then requested a sidebar conference. The court noted on the record, outside the presence of the jury, that the defendant's counsel sought to question the plaintiff for credibility purposes regarding the date that she first contacted an attorney. The plaintiff's counsel objected, stating that the underlying presumption behind the question, that is, that the plaintiff's description of her symptoms was inconsistent, lacks a medical foundation because her testimony was consistent as she complained of neck and back pain when she visited the walk-in clinic. The court concluded that the defendant's counsel had, by establishing a discrepancy between the plaintiff's descriptions of her symptoms, laid a proper foundation to inquire whether the plaintiff had consulted counsel in between her visit to the walk-in clinic and her initial visit to the chiropractor for purposes of impeachment. It stated that the evidence "at least arguably characterizes the plaintiff's symptoms one way and that is different than how she described her symptoms after she consulted counsel. Again, whether or not the jury chooses to credit any of that evidence, that's up to them. But I think he's laid a foundation to ask the question for purposes of impeachment and general credibility of the witness."

Our standard of review is well established. "Upon review of a trial court's decision, we will set aside an evidentiary ruling only when there has been a clear abuse of discretion. . . . The trial court has wide dis-

cretion in determining the relevancy of evidence and the scope of cross-examination and [e]very reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Internal quotation marks omitted.) *McCrea* v. *Cumberland Farms, Inc.*, 204 Conn. App. 796, 804, 255 A.3d 871, cert. denied, 338 Conn. 901, 258 A.3d 676 (2021). "Cross-examination, in quest for the truth, provides a means for discrediting the testimony of a witness. When pursued for that purpose, the examination frequently and legitimately enters into matters collateral to the main issues. . . . Given that function of cross-examination in shedding light on the credibility of the witness' direct testimony, [t]he test of relevancy is not whether the answer sought will elucidate any of the main issues, but whether it will to a useful extent aid the . . . jury in appraising the credibility of the witness and assessing the probative value of the direct testimony." (Citation omitted; internal quotation marks omitted.) *Trumpold* v. *Besch*, 19 Conn. App. 22, 26–27, 561 A.2d 438, cert. denied, 212 Conn. 812, 565 A.2d 538 (1989), cert. denied, 494 U.S. 1029, 110 S. Ct. 1476, 108 L. Ed. 2d 613 (1990); see also Conn. Code Evid. §§ 4-1 and 4-3. "It is well established that [c]ross-examination is an indispensable means of eliciting facts that may raise questions about the credibility of witnesses and, as a substantial legal right, it may not be abrogated or abridged at the discretion of the court to the prejudice of the party conducting that cross-examination." (Internal quotation marks omitted.) *McCrea* v. *Cumberland Farms, Inc.*, supra, 806.

In *Trumpold* v. *Besch*, supra, 19 Conn. App. 24, this court rejected a claim that the trial court improperly permitted the defendants' counsel to ask the plaintiffs when they first had contacted an attorney. The defendants argued that, because there was a disparity in evidence presented by the parties concerning the force of the impact and the severity of injuries, the trial court properly permitted evidence that Alfred Trumpold, the plaintiff who was involved in the motor vehicle collision, did not seek medical assistance immediately, but instead consulted an attorney. Id., 26. This court agreed with the defendants that such inquiry "was permissible on these particular facts. Under other factual circumstances, such evidence might be inadmissible" and reasoned that "[t]he trial court, in its discretion, could have concluded that the information was useful to the jury in assessing the parties' testimony concerning the nature of the accident, and on cross-examination the defendants were entitled to demonstrate to the jury apparent weaknesses in the plaintiffs' testimony educed during direct examination." Id., 26–27.

The mere fact, in and of itself, that someone is represented by counsel generally has no legal relevancy because it has no tendency to make a fact more probable or less probable. See Conn. Code Evid. § 4-1 (defin-

ing "[r]elevant evidence"). Nevertheless, under the facts of the present case, we conclude that the court did not abuse its discretion in determining that the defendant had established a proper foundation to ask, for purposes of credibility, when the plaintiff first contacted an attorney. The record from the plaintiff's April 21, 2016 visit to the walk-in clinic indicates that she had no neck or back pain. The plaintiff's testimony on direct examination as well as the report from the plaintiff's April 29, 2016 visit with Italia indicate that she had experienced constant pain in numerous areas, including her neck and back, since the date of the collision. Evidence that the plaintiff had retained counsel in between visiting the walk-in clinic and commencing treatment with Italia was relevant to the defendant's view of the evidence that the plaintiff's description of her injuries to Italia lacked credibility. See, e.g., *McCrea* v. *Cumberland Farms, Inc.*, supra, 204 Conn. App. 805–806 (evidence that plaintiff consulted attorney prior to seeking medical treatment was relevant to issue of plaintiff's credibility regarding claimed injuries).

The plaintiff argues, however, that "the trial court's error was, sua sponte, to assume the role of an expert and give an opinion that the medical complaints were inconsistent."[2] She contends that Italia's testimony establishes that her descriptions of her injuries to medical personnel at the walk-in clinic and to Italia were not inconsistent.[3] The plaintiff has not directed us to any case law, nor are we aware of any, that requires expert testimony in this context.[4] Rather, the court did not need such expert testimony in order to determine that there was a potential factual discrepancy for the jury to resolve concerning the plaintiff's complaint to Italia on April 29, 2016, that the pain in her neck, back, and other locations had begun on the date of the collision and the plaintiff's record from her visit with the walk-in clinic that indicated no neck or back pain. This is the sort of routine, straightforward determination that judges frequently are required to make. For the foregoing reasons, we conclude that, under the facts of the present case, the court did not abuse its discretion in permitting the defendant's counsel to inquire into the timing of the plaintiff's consultation with counsel for purposes of impeachment.

## II

The plaintiff also claims that the court erred in admitting into evidence a letter to an undisclosed recipient from Adler Law, the law firm that represented the plaintiff at trial, that indicated that the plaintiff had retained counsel to represent her in connection with the accident. We disagree.

The following additional facts and procedural history are relevant. After unsuccessfully attempting to refresh the plaintiff's recollection as to whether she consulted an attorney prior to her initial chiropractic visit with

Italia on April 29, 2016, the defendant's counsel showed the plaintiff exhibit D, which was marked for identification. Exhibit D was a redacted version of a letter from Adler Law dated April 27, 2016, which stated that the plaintiff had retained them to represent her in connection with injuries she had sustained as a result of the collision. The defendant's counsel inquired whether, to the best of the plaintiff's knowledge, the information contained in exhibit D was accurate. The plaintiff responded, "I guess so," and further stated, "I don't know numbers. I don't know names. I don't know any of those things. I can't verify the accuracy of the sheet." The defendant's counsel then offered exhibit D as a full exhibit. The plaintiff's counsel objected on the basis that the document contained hearsay, and that the plaintiff had not identified the document. The court overruled the plaintiff's objection and, outside the presence of the jury, stated that it had admitted the document under the residual exception to the hearsay rule, reasoning that there was a reasonable necessity for the admission into evidence of exhibit D, and that the April 27, 2016 letter, which is a business record, was trustworthy and reliable.

The following legal principles are relevant. "An [out-of-court] statement is hearsay when it is offered to establish the truth of the matters contained therein. . . . As a general rule, hearsay evidence is not admissible unless it falls under one of several well established exceptions." (Internal quotation marks omitted.) *State* v. *Bennett*, 324 Conn. 744, 762, 155 A.3d 188 (2017). The residual exception to the hearsay rule "admits into evidence statements that are technically hearsay and which do not fit within any traditional exception." *State* v. *Dollinger*, 20 Conn. App. 530, 539, 568 A.2d 1058, cert. denied, 215 Conn. 805, 574 A.2d 220 (1990). The residual exception to the hearsay rule provides that "[a] statement that is not admissible under any of the foregoing exceptions is admissible if the court determines that (1) there is a reasonable necessity for the admission of the statement, and (2) the statement is supported by equivalent guarantees of trustworthiness and reliability that are essential to other evidence admitted under traditional exceptions to the hearsay rule." Conn. Code Evid. § 8-9. "Reasonable necessity is established by showing that unless the hearsay statement is admitted, the facts it contains may be lost, either because the declarant is dead or otherwise unavailable, or because the assertion is of such a nature that evidence of the same value cannot be obtained from the same or other sources." (Internal quotation marks omitted.) *State* v. *Abernathy*, 72 Conn. App. 831, 852, 806 A.2d 1139, cert. denied, 262 Conn. 924, 814 A.2d 379 (2002).

"It is well settled that [w]e review the trial court's decision to admit [or exclude] evidence, if premised on a correct view of the law . . . for an abuse of discre-

tion. . . . Under the abuse of discretion standard, [w]e [must] make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." (Citation omitted; internal quotation marks omitted.) *Filippelli* v. *Saint Mary's Hospital*, 319 Conn. 113, 119, 124 A.3d 501 (2015). "A court's conclusion as to whether certain hearsay statements bear the requisite indicia of trustworthiness and reliability necessary for admission under the residual exception to the hearsay rule is reviewed for an abuse of discretion." *State* v. *Faison*, 112 Conn. App. 373, 384, 962 A.2d 860, cert. denied, 291 Conn. 903, 967 A.2d 507 (2009). "We review the trial court's conclusion regarding reasonable necessity for the admission of the hearsay statements under an abuse of discretion standard." *In re Tayler F.*, 296 Conn. 524, 537, 995 A.2d 611 (2010).

The plaintiff argues that the court made no findings that there was a reasonable necessity for the admission of the letter or that the letter was trustworthy or reliable.[5] The court, however, stated on the record that there was a reasonable necessity for the admission of the April 27, 2016 letter into evidence and that the letter was trustworthy and reliable. As we have explained in part I of this opinion, the date that the plaintiff retained counsel was relevant to the credibility of the plaintiff's changing description of her injuries. Despite the effort by the defendant's counsel to refresh the plaintiff's recollection, the plaintiff stated that she could not recall whether she had met with Adler Law prior to her initial visit with Italia. The court reasonably could have determined that permitting the April 27, 2016 letter to be admitted under the residual exception was preferable to the potential ethical complications that could arise if the defendant's counsel were to call the plaintiff's counsel or another employee from Adler Law to testify at trial regarding the date that the plaintiff had retained the firm to represent her. We conclude that the court did not abuse its discretion in determining that there was a reasonable necessity for the introduction of the April 27, 2016 letter and that the letter bears the requisite indicia of trustworthiness and reliability.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff testified at trial that she had explained to the officer that she did not want medical attention because her husband was at home and was sick. On cross-examination, she admitted that she had testified at a deposition that, when asked by a police officer at the scene whether she needed an ambulance, she responded "no, I'm okay."

[2] The plaintiff further argues that the proper procedural vehicle for the defendant to present a medical opinion concerning any alleged inconsistency in the plaintiff's descriptions of her injuries "was already established as the plaintiff filed a motion in limine. . . . The trial court then would have had the opportunity to rule on the motion and, if granted, the jury would never be tainted." Before proceeding with the start of evidence on October 29, 2019, the court explained that there had been a discussion in chambers regarding the plaintiff's motion in limine concerning the attorney-client relationship between the plaintiff and her counsel. The court explained that it had ruled as to how those issues would be dealt with at trial and asked

the parties if they had anything further to put on the record. The plaintiff's counsel responded in the negative and further stated, "I think from our discussions at chambers, we'll deal with it through the evidence." The plaintiff, who had expressed agreement with the trial court's decision to address the issue during the presentation of evidence, cannot now claim on appeal that the ruling was in error. "It is well established that [w]hen a party consents to or expresses satisfaction with an issue at trial, claims arising from that issue are deemed waived and may not be reviewed on appeal." (Internal quotation marks omitted.) *Stratek Plastics, Ltd.* v. *Ibar*, 179 Conn. App. 721, 731–32, 178 A.3d 1135 (2018).

[3] Specifically, the plaintiff highlights the portion of Italia's testimony in which he explains that "myalgia" is a medical term for muscle pain and that it is not uncommon for an individual to experience localized pain from an injury and "not really feel anything," but then one or more weeks later, experience irritation in the surrounding tissues caused by a spreading of the inflammation. The report from the plaintiff's initial visit with Italia as well as her testimony at trial reveal that the plaintiff, during her initial visit with Italia, stated that she had experienced pain in her neck, back, and other locations since the date of the collision.

[4] As the plaintiff aptly points out, "[e]xpert testimony should be admitted when: (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues. . . . [T]o render an expert opinion the witness must be qualified to do so and there must be a factual basis for the opinion." (Internal quotation marks omitted.) *Gostyla* v. *Chambers*, 176 Conn. App. 506, 512, 171 A.3d 98 (2017), cert. denied, 327 Conn. 993, 175 A.3d 1244 (2018).

[5] The plaintiff argues that, because the letter was not authenticated by the keeper of the records at Adler Law, but, rather, was admitted on the basis of the testimony of the plaintiff, who did not recall having seen the document previously, that it was not admissible pursuant to the business records exception to the hearsay rule, General Statutes § 52-180. Although the court stated in front of the jury that the document "appears on its face as plainly a business record," the court later, outside the presence of the jury, stated that it was admitting the letter under the residual exception to the hearsay rule and that it "didn't want to comment to that effect in front of the jury." We conclude that the court properly admitted the letter under the residual exception to the hearsay rule and, therefore, do not address this argument.